## 74563. HARDEE'S FOOD SYSTEMS, INC. v. HALL.
### (362 SE2d 143)

POPE, Judge.

Plaintiff Wilhelmina Hall was employed by defendant Hardee's Food Systems, Inc., for approximately ten years. At the time of plaintiff's termination she held an assistant manager's position, which required her to make bank deposits of monies collected during her shift. On January 26, 1985, a Saturday, plaintiff was charged with the responsibility of making the deposit for the night shift. On Monday, January 28, 1985, Adrian Hill, also a Hardee's assistant manager, learned from the bank that the Saturday deposit had not been made. Hill contacted the plaintiff at home and she informed him that she made the deposit. Hill again contacted the bank and they confirmed that the deposit had not been made.

Plaintiff returned to work Monday night. According to her testimony at trial, when she left work that night she took with her a coat that she had left at work over the weekend. Plaintiff testified that the next day (Tuesday) she found the missing deposit in the coat pocket. She further testified that she attempted to make the deposit that night, but the depository was broken. She then went to the Hardee's store where she worked. She and Hill left the store to go to the bank to deposit both the Saturday deposit and the deposit for that night's shift. Upon finding that the depository still was inoperable, they returned to the store and contacted another Hardee's to see if they could make the deposit from that store; however, that store was closed and no one answered their call. Hill then telephoned the store manager who told him to wait until plaintiff left and then hide the money in the ceiling, which was apparently a common hiding place.

The next morning plaintiff arrived at the store, and although she had not seen where Hill placed them the night before, retrieved the deposits from the ceiling. She then solicited Brenda Jones, another employee, to go to the bank with her to make the deposit. Plaintiff testified that it was unusual to make a deposit at that time of the work day, but that she was anxious to get to the bank with the "late" deposit.

Plaintiff and Jones proceeded to go by car to the bank. After they exited the Hardee's parking lot, and as they were rounding a curve, an unidentified man opened the door on the passenger side, where Jones was riding, stuck an object in Jones' side and demanded their money. Plaintiff handed the man the two deposit bags, which were lying on top of her purse. He then told them to count to thirty and not look back, threw the keys under the car and fled. Although the assailant was never apprehended, Jones testified she had seen him standing across from Hardee's earlier in the day.

The defendant instituted criminal proceedings against plaintiff

and plaintiff was arrested on theft by conversion charges. The investigating officer and plaintiff both testified at the probable cause hearing and the case was bound over for prosecution. However, after considering the circumstantial nature of the evidence against plaintiff, the district attorney charged with handling the case decided not to present the case to the grand jury for indictment. At trial he testified that the case was considered "inactive" and in theory could be presented to the grand jury anytime within four years of the date the crime was committed (the statute of limitation for theft by conversion).

Plaintiff then instituted civil proceedings against the defendant asserting claims for malicious prosecution, false imprisonment, slander, libel, assault, battery and violations of 42 USC §§ 1981, 1983 and 1985. Plaintiff also sought attorney fees based on 42 USC § 1988. Plaintiff dismissed her false imprisonment claim at trial and the trial court granted defendant's motions for directed verdict on the slander, assault, § 1981 and § 1985 claims. The jury returned a general verdict on the four remaining counts and awarded plaintiff $150,000. The trial court also awarded plaintiff $15,600 as attorney fees pursuant to § 1988. Defendant appeals, enumerating as error the denial of its motion for directed verdict on the remaining counts.

1. Defendant first enumerates as error the denial of its motion for directed verdict as to the battery claim. Although conceding that no agent or representative of Hardee's committed a battery against her, plaintiff nevertheless argues that defendant should be liable for acts committed by police officers during plaintiff's arrest and subsequent detention.[1] We disagree. Our review of the record discloses no evidence that the arresting and detaining officers' actions were done in concert with or on behalf of defendant, or that the officers were acting as defendant's agent in any capacity whatsoever. To the contrary, the record clearly shows that the actions complained of were effected while the officers were discharging their official duties and that defendant could not and did not direct the manner in which these duties were to be performed. *Moreland v. Poss*, 171 Ga. App. 733, 735 (3) (320 SE2d 841) (1984), rev'd on other grounds, 253 Ga. 730 (324 SE2d 456) (1985). See generally OCGA § 17-4-20 (b). We hold, therefore, that under the facts presented here the trial court erred in failing to grant defendant's motion for directed verdict on plaintiff's claim of battery.

2. Defendant next enumerates as error the trial court's denial of its motion for directed verdict on plaintiff's libel claim. The record

---

[1] Specifically, plaintiff argues that the handcuffs placed on her wrists were too tight, that she was forced to sit on her handcuffed hands during the ride to the police station and that once she was at the police station she was not allowed to use the rest room for an extended period of time, causing her to urinate on herself.

shows that the only evidence of a written defamation presented in the case at bar was the affidavit signed by defendant's representative to obtain a warrant for plaintiff's arrest. "It is well established that an affidavit before a magistrate, made for the purpose of causing an arrest, will not support an action for libel, though falsely and maliciously made. *Francis v. Wood*, 75 Ga. 648 (1886). '(T)he affidavit upon which the warrant issued affords no basis for a recovery under a defamation theory. (Cit.)' *Tetrault v. Shelton*, 179 Ga. App. 746, 747 (1) (347 SE2d 636) (1986). The remedy where such an affidavit is falsely and maliciously sworn lies rather in the torts of malicious arrest and malicious prosecution. . . . As it appears that all instances of libel alleged were privileged absolutely, [defendant] was entitled to judgment as a matter of law, and the trial court erred by denying its motion for [directed verdict] as to the libel count."[2] *Watkins v. Laser/Print-Atlanta*, 183 Ga. Ap. 172, 173 (358 SE2d 477) (1987).

3. Defendant also contends that the trial court erred in denying its motion for directed verdict on plaintiff's USC § 1983 claim. "A plaintiff in a § 1983 action must show (1) that he has been deprived of a right secured by the constitution and laws of the United States, and that (2) the defendant acted under color of state law. . . . The conduct causing the deprivation must be fairly attributable to the state in order to be conduct under-color-of-state-law. This is characterized as the fair attribution test[, which] is itself broken into a two part approach. . . ." (Punctuation omitted.) *Poss v. Moreland*, 253 Ga. 731, supra. In the present case, plaintiff relies on certain acts of cooperation and sharing of information between the defendant and the police officers charged with investigating and arresting plaintiff to show that defendant acted under color of state law. We agree with defendant that, as a matter of law, defendant's actions in the present case do not constitute state action. "[I]t is manifestly clear that either knowing collusion with a private person in a fraudulent, illegal scheme by state officials or the use of an allegedly unconstitutional statute or procedure is necessary for the actions of a private person to fairly be attributable to the state. Without such state action, no claim is stated under § 1983 and the suit must be dismissed." *Lomax v. Davis*, 571 FSupp. 805, 807 (N.D. Miss. 1983), and cits. Moreover, "[t]he mere fact that the [defendant was a complainant and witness]

---

[2] Plaintiff also argues that certain statements allegedly made to a Hardee's franchise owner concerning the "incident" constituted a republication of the written defamation and were therefore sufficient to support her claim for libel. However, the record does not show that the statements allegedly made were in the nature of a republication of any libelous material. Moreover, the only evidence of such statements is plaintiff's testimony at trial that the franchise owner told her of such statements. This hearsay evidence clearly has no probative value and thus cannot form the basis of plaintiff's libel claim. *Land v. Delta Airlines*, 147 Ga. App. 738 (4) (250 SE2d 188) (1978).

in an action which itself was prosecuted under color of law does not make [its] complaining or testifying other than what it was, i.e., the action of [a] private [person] not acting under color of law." *Grow v. Fisher*, 523 F2d 875, 879 (7th Cir. 1975). Hence, the trial court also erred in denying defendant's motion for directed verdict as to plaintiff's § 1983 claim.

4. Likewise, because 42 USC § 1988 authorizes the trial court to award attorney fees only to a prevailing party in a section 1981, 1982, 1983, 1985 or 1986 action, our holding in Division 3, supra, also mandates the reversal of the trial court's award of attorney fees pursuant to that section. *Davis v. Ramey*, 174 Ga. App. 417 (4) (330 SE2d 130), rev'd on other grounds, *City of Roswell v. Davis*, 255 Ga. 158 (335 SE2d 582) (1985).

5. Defendant also challenges the denial of its motion for directed verdict on the malicious prosecution claim. In order to prevail on a malicious prosecution claim, the plaintiff must show (1) a prosecution instituted maliciously and (2) without probable cause which (3) has terminated favorably to the plaintiff. See, e.g., *J. C. Penney Co. v. Miller*, 182 Ga. App. 64 (2) (354 SE2d 682) (1987). In the present case, the assistant district attorney charged with prosecuting the criminal charges against plaintiff testified that because the case against plaintiff consisted entirely of circumstantial evidence, he decided not to present the case to the grand jury for indictment. He further testified, "Now, procedurally what that means . . . is that the case . . . , it's inactive. Technically it could be indicted or brought to a grand jury at any time within the statute of limitation for this particular crime. In other words, our office in theory could present the case to the grand jury anytime within four years from the . . . date of alleged crime."

"Since four years have not elapsed since the [warrant was] issued, nothing prevents the district attorney from proceeding with a prosecution. See OCGA § 17-3-1 (c). 'The present disposition simply does not constitute an abandonment and/or termination of the proceeding, absent a subsequent formal entry of dismissal of the criminal charges. (Cits.)' *McCord v. Jones*, 168 Ga. App. 891, 893 (311 SE2d 209) (1983). . . . Since termination of the prosecution in [plaintiff's] favor is an essential element of [a claim] for malicious prosecution and malicious arrest, [cits.], the trial court [should have granted defendant's motion for directed verdict as to this claim]." *Watkins v. Laser/Print-Atlanta*, 183 Ga. App. at 172-73, supra.

6. Based on our determination that the trial court erred in denying defendant's motions for directed verdict as to all four of plaintiff's remaining claims, it is unnecessary for us to consider defendant's remaining enumerations of error.

*Judgment reversed. Birdsong, C. J., and Deen, P. J., concur.*

DECIDED OCTOBER 20, 1987.

*James J. Thomas II, Kevin A. Ross*, for appellant.
*Hirsch Friedman*, for appellee.