A97A1417. HIGHTOWER v. THE STATE.
(487 SE2d 646)

ELDRIDGE, Judge.

On September 17, 1988, appellant, Michael Hightower, raped a 14-year-old neighbor who lived across the street from appellant's home. Appellant lived with his wife and his two small children. The victim frequently came to appellant's home to use his washing machine to do laundry, because the victim had no washer or dryer.

The victim testified that at about 1:30 p.m. on Saturday, September 17, 1988, when she came to appellant's kitchen to wash clothes, appellant raped her in the kitchen while his children were playing outside, and appellant's wife was sewing in the bedroom. Appellant came into the kitchen and locked the back door. Appellant shoved the victim into a corner next to the sink and pulled up and to the side her baggy shorts and put his penis in her vagina. The victim did not consent to have intercourse with appellant but did not cry

out. The penetration took place while they stood in the corner, and appellant commanded her to "get [her] damn ass on the . . . sink." Appellant scared the victim, and he refused upon her plea to stop. The victim started to bleed after appellant withdrew.

Appellant's wife entered the kitchen while the victim was in the bathroom. Appellant's wife began to question the victim about what had happened, but the victim began to cry. The wife questioned appellant as to what went on with the victim. The victim and appellant's wife went into the living room to confront appellant, and appellant accused his wife of putting lies in the victim's head, and indicated that he had not meant to hurt the victim and was sorry. The victim went home and told her mother that appellant had raped her.

The victim was taken to the hospital where she underwent a rape examination by a doctor. The examining physician testified that he found a laceration to the bottom base of the vagina which was fresh, superficial, and about a half-inch in length. In the doctor's opinion, the victim's vagina had been traumatized recently. It was his opinion that there had been forcible penetration of the vagina. The doctor found no bruising on the rest of the victim's body.

The victim's mother corroborated as an outcry witness. The victim's mother stated that the appellant's wife also related that the victim made an outcry. The victim's mother also confronted the appellant immediately, and he told her, "I didn't do what you think I did to her. . . . I didn't penetrate her like you think I did." Appellant admitted that he had grabbed her and pulled up her pants.

The victim's panties were taken at the hospital and sent to the GBI State Crime Laboratory for analysis. Upon analysis, human semen was found mixed with blood on the panties.

No sperm was found in the vaginal smear, which defense counsel emphasized on cross-examination. Defense counsel also sought, through cross-examination of the lab technician, to bring out that she could not distinguish whether the blood on the panties was menstrual blood or came from a laceration. The defense also called appellant's wife to the stand, and she denied that the victim ever told her that appellant had penetrated the victim. In addition, appellant testified in his own defense that he did not rape the victim, although he did kiss her, pull up her shorts, and place his fingers in her vagina. Appellant denied grabbing the victim. He denied ejaculating on the victim's panties. Further, as appellant is a minister, the defense put up evidence of good character.

On October 13, 1989, the jury found appellant guilty of rape and aggravated assault. On October 13, 1989, appellant was sentenced. On November 29, 1989, a motion for new trial was filed. On December 6, 1989, the motion for new trial was denied, and appellant filed a notice of appeal. On March 2, 1992, the notice of appeal was dis-

missed by the trial court for failure to obtain a transcript in a timely fashion. On December 12, 1996, an extraordinary motion for new trial was filed, raising the issue of ineffective assistance of counsel. The motion was denied after a lengthy hearing. Appellant filed a new notice of appeal from the denial of the extraordinary motion for new trial. *Held*:

Appellant's sole enumeration of error is that the trial court erred in denying his extraordinary motion for new trial on the issue of ineffective assistance of counsel. Appellant contends that: the victim made a prior inconsistent written statement that was impeaching to the GBI investigator; appellant's trial counsel never sought any formal discovery, because the prosecution had an open file policy; trial counsel failed to discuss with appellant having sexual intercourse previously with the victim which could allow an exception to the Rape Shield Statute; appellant told counsel that he had previously had intercourse with the victim; trial counsel did not seek to make a showing to the trial court of prior sexual intercourse with the 14-year-old victim as an exception to the Rape Shield Statute; trial counsel failed to meet with him between March 1989 and the first day of trial on October 12, 1989, nor did trial counsel meet with appellant's wife; the victim and the victim's mother stated that they had never been contacted by appellant's trial counsel; appellant's statement to the GBI, which was introduced at trial, may have been suppressible if a *Jackson-Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), hearing had been held; and trial counsel failed to determine if there existed pervasive and extensive pretrial publicity which was harmful to appellant. In short, appellant raises a total of 20 acts that he contends are evidence of ineffective assistance of counsel. We do not agree.

(a) The victim's statement was not impeaching as a prior inconsistent statement.

While the trial court records do not reveal pretrial discovery, in ruling upon the motion for new trial on the ground of ineffectiveness, the trial court found that there existed no exculpatory or impeaching *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), materials in the district attorney's file that appellant would have been entitled to obtain had a request been made. This ruling was correct. The statement of the victim is neither a prior inconsistent statement, nor contradictory so as to come within the ambit of *Brady*.

A witness may be impeached by prior inconsistent statements which contradict a witness' testimony from the stand; those statements must be relevant and material to the witness' testimony and to the case. OCGA § 24-9-83. However, "if such contradiction is not on matters relevant to [her] testimony and to the case, or if, indeed, such prior statement fails to amount to a contradiction at all, the

question of whether or not [she] has been successfully impeached is not then one of fact for the jury, but one of law for the court." *Travelers Ins. Co. v. Bailey*, 76 Ga. App. 698, 703 (1) (47 SE2d 103) (1948); see also *Hudgins v. Bloodworth & Co.*, 109 Ga. 197 (1) (34 SE 364) (1899). "Proof of a different but not inconsistent statement would not suffice to raise an issue either as to impeachment or as to substantive use." *Hopkins v. State*, 167 Ga. App. 811, 814 (1) (307 SE2d 707) (1983); see also *Hodo v. Jenkins*, 209 Ga. 4 (70 SE2d 452) (1952); *Berry v. Dinsmore*, 115 Ga. App. 256 (154 SE2d 653) (1967). "As the absence of a prior statement at the hearing fails to amount to a contradiction, there could be no impeachment under the provisions of OCGA § 24-9-83." *Thomas v. State*, 168 Ga. App. 587 (1) (309 SE2d 881) (1983). "However, a witness may not be impeached because of a discrepancy as to a wholly immaterial matter. *Mann v. State*, 124 Ga. 760 (4) (53 SE 324) [(1906)]. Whether the victim had given testimony as to the particular sexual act in question at a hearing prior to trial is wholly immaterial to the issue of defendant's guilt of the crimes charged. *Gilbert v. State*, 159 Ga. App. 326, 327 (2) (283 SE2d 361) [(1981)]." Id.

"The excluded testimony showed only that the State's witness had made a prior statement which was less expansive than her trial testimony. That the trial testimony of the State's witness merely included additional facts demonstrates no impeaching inconsistency with the excluded prior statement attributed to her." *Weathers v. State*, 198 Ga. App. 871 (2) (403 SE2d 449) (1991); see also *Thomas v. State*, supra at 587.

An inconsistent prior statement to subsequent testimony is the difference between an assertion that an event took a "pretty long time" and "around an hour" versus trial testimony that the same event took "a couple of minutes." *Shearer v. State*, 259 Ga. 51, 52 (5) (376 SE2d 194) (1989). "To constitute a self-contradiction '[i]t is not a mere difference of statement that suffices; nor yet is an absolute oppositeness essential; it is an inconsistency that is required. . . . As a general principle, it is to be understood that this inconsistency is to be determined, not by individual words or phrases alone, but by the *whole impression or effect* of what has been said or done. . . .' 3 Wigmore Evidence 725, § 1040." (Emphasis in original.) *Travelers Ins. Co. v. Miller*, 104 Ga. App. 554, 564 (2) (c) (122 SE2d 268) (1961). "The object of showing self-contradiction as impeaching evidence is to demonstrate the witness' capacity to make errors, rather than to prove a specific error. 'We place [her] contradictory statements side by side, and, as both cannot be correct, we realize that in at least one of the two [she] must have spoken erroneously. Thus, we have detected [her] in one specific error, from which may be inferred a capacity to make other errors. . . . It is the repugnancy of the two

that is significant.' 3 Wigmore Evidence 685, 686, § 1017." Id. at 565.

In the case sub judice, the contended contradictory or inconsistent prior statement is that the victim told the GBI investigator that appellant yelled at her to "open her damn legs"; that he told her that he wanted for her to have a baby like "the other girl"; and that he struggled to force her legs apart. Such facts were neither contradictory nor inconsistent with her trial testimony, but were merely additional facts that corroborate the trial testimony and demonstrate no impeaching inconsistency. *Weathers v. State*, supra at 871. This evidence would not be discoverable under *Brady* because it was inculpatory and not impeaching.

(b) The issue of consent does not provide a basis for finding ineffective assistance of counsel.

Appellant contends that trial counsel was ineffective in not bringing out that appellant had sexual intercourse with the victim on several prior occasions and that prior sexual relations between the victim and the appellant would corroborate the defense of consent and come within the exception to the Rape Shield Act. OCGA § 24-2-3 (b). The victim, at the motion for new trial, denied any prior sexual relations with appellant.

The victim was born on September 30, 1973, and the rape occurred on September 17, 1988, which would make the victim almost 15 years of age at the time of the occurrence.[1] At the time of the prosecution, statutory rape applied only to females "under the age of 14 years" and did not apply to the case sub judice; thus, alleging consent was a defense to the offense of rape. However, for a minister to engage in adultery with a 14-year-old female in his home on multiple occasions would clearly affect his credibility and could cause substantial prejudice against him with the jury, especially where such events were denied by the victim. The decision not to inject such issue in the trial (even if true) was clearly a matter of trial strategy, because character, consent, and credibility were appellant's defenses. While testimony as to prior acts of consensual sex would corroborate consent on this occasion, it would undermine the character and credibility defenses; further, it would be appellant's word against the victim's testimony that he had been molesting the minor for as long as three months for his own sexual gratification, even though the acts, with consent, were not criminal simply because of the age of the victim.[2] Legitimate trial strategy cannot be the basis for a claim of

---

[1] Ga. L. 1968, p. 1249, § 1, applicable at the time of the offense, was changed in OCGA § 16-6-3 to 16 years. Ga. L. 1995, p. 957, § 3; Ga. L. 1996, p. 871, § 1; Ga. L. 1996, p. 1115, § 3.

[2] The child molestation statute at the time of the occurrence, OCGA § 16-6-4 (a) (Ga. L. 1968, p. 1249, § 1), applied only to a minor under 14 years of age. In 1995, the Georgia legislature increased the age to 16 years. Ga. L. 1995, p. 957, § 4.

denial of the constitutional right to "effective assistance of counsel," because such decision falls within the range of reasonable professional assistance. See *Fargason v. State*, 266 Ga. 463, 464-465 (2) (467 SE2d 551) (1996); *Lakes v. State*, 266 Ga. 389, 390 (2) (467 SE2d 566) (1996); *Black v. State*, 264 Ga. 550, 551 (448 SE2d 357) (1994); *Keanum v. State*, 212 Ga. App. 662, 664 (3) (442 SE2d 790) (1994).

(c) Trial counsel's asserted lack of preparation does not provide a basis for ineffective assistance of counsel in the case sub judice.

Appellant contends that trial counsel never met with him from March 1989 until the beginning of trial on October 12, 1989. However, trial counsel testified that he did meet with appellant at various times to assist in trial preparation. Trial counsel testified that he talked to appellant's wife prior to trial regarding her testimony at trial. Appellant has made no specific showing that trial counsel was not prepared for trial as a consequence or that appellant was in fact prejudiced by the alleged unpreparedness. Appellant asserts that trial counsel did not interview the victim or her mother; however, evidence showed such witnesses would not consent to be interviewed and would have refused to talk to defense counsel even if they had been contacted for an interview. Therefore, the evidence does not support a finding of ineffective assistance of counsel based on lack of preparation.

(d) Appellant's voluntary statement provides no basis for finding ineffective assistance of counsel.

Appellant contends that trial counsel should have filed a *Jackson-Denno* motion to suppress his pretrial statement to the GBI. Even if the statement had been suppressed, the voluntary statement could have been used as a prior inconsistent or contradictory statement to impeach appellant's trial testimony, thus becoming substantive evidence in the case. *Michigan v. Harvey*, 494 U. S. 344 (110 SC 1176, 108 LE2d 293) (1990); *Harris v. New York*, 401 U. S. 222 (91 SC 643, 28 LE2d 1) (1971). However, appellant's statement was given voluntarily. The *Miranda v. Arizona*, 384 U. S 436 (86 SC 1602, 16 LE2d 694) (1966), rights were given to appellant prior to his being questioned. Appellant was neither threatened nor promised anything, and appellant waived his rights freely and voluntarily, giving a written statement. In his statement, appellant admitted to kissing the victim, backing her against the sink, lifting her shorts, and inserting two to three fingers into her vagina before his wife came into the kitchen. When the appellant testified, he stated the same facts in his defense. Appellant, at trial on the motion for new trial, never alleged that his statement was not freely and voluntarily given. Thus, the lack of a *Jackson-Denno* hearing was not prejudicial, and the conduct of trial counsel was a reasonable trial strategy.

(e) Failure to move for a change in venue provides no basis for

finding ineffective assistance of counsel.

There was no evidence that pretrial publicity was such as to authorize the trial judge to exercise his discretion and grant a change of venue. OCGA § 17-7-150. There was no evidence that "an impartial jury [could not] be obtained in the county where the crime [was] alleged to have been committed." OCGA § 17-7-150 (a) (1). The voir dire was not taken down, so there is no evidence of community prejudice revealed by the voir dire. Appellant showed interest on the part of the news media; he produced his wife to testify as to the news coverage; however, such evidence was insufficient to require a change of venue.

"At the hearing on the motion for new trial, the burden was on appellant to establish that he received ineffective assistance of trial counsel. *Van Alstine v. State*, 263 Ga. 1, 4 (426 SE2d 360) (1993). To meet this burden, appellant was required to show not only that trial counsel's performance was deficient, but also that, absent trial counsel's deficient performance, there is a reasonable likelihood that the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Hayes v. State*, 263 Ga. 15 (426 SE2d 557) (1993)." *White v. State*, 265 Ga. 22 (2), 23 (453 SE2d 6) (1995). " 'When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.' [*Strickland v. Washington*, supra] at 695; see *Pitts v. Glass*, 231 Ga. 638, 639 (203 SE2d 515) (1974) (adopting standard of 'reasonably effective assistance' at the time service was rendered)." *Black v. State*, 264 Ga. 550, 551 (1) (448 SE2d 357) (1994). Here the evidence was overwhelming: the victim's testimony; the victim's outcry to both her mother and appellant's wife; trauma caused to the vagina, resulting in immediate bleeding; semen mixed with the blood on the victim's panties; and appellant's admission that he had sexual contact with the victim in the kitchen.[3] The trial judge did not abuse his discretion in denying the extraordinary motion for new trial based upon ineffective assistance of counsel.

*Judgment affirmed. Birdsong, P. J., concurs. Ruffin, J., concurs in judgment only.*

DECIDED JUNE 10, 1997 —
RECONSIDERATION DENIED JUNE 26, 1997 — ▮

*James N. Finkelstein, Howard J. Stiller*, for appellant.

---

[3] Such evidence satisfies *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), because a rational trier of fact could find guilt beyond a reasonable doubt.

*H. Lamar Cole, District Attorney, Bradfield M. Shealy, Jennifer A. Thomas, Assistant District Attorneys*, for appellee.