## A98A1321. KAHN v. THE STATE.
### (509 SE2d 137)

ANDREWS, Chief Judge.

Kim Kahn, charged with malice murder, felony murder, and possession of cocaine, was convicted of voluntary manslaughter and possession of cocaine and appeals.[1]

1. The first two enumerations deal with denial of Kahn's motion for directed verdict, thereby raising the issue of the legal sufficiency of the evidence. OCGA § 17-9-1; *Martin v. State*, 219 Ga. App. 277, 278 (1) (464 SE2d 872) (1995); *Towns v. State*, 185 Ga. App. 545 (365 SE2d 137) (1988).

(a) Regarding the voluntary manslaughter charge,[2] viewed with all inferences in favor of the jury's verdict, *Bowman v. State*, 222 Ga. App. 893, 896 (1) (476 SE2d 608) (1996), the evidence was that Kahn was leasing a four-bedroom house in which she lived with teenage brothers Jeremy Patton and Corey Patton and their younger sister, children of an acquaintance of Kahn's. Lance Martin, the victim, moved into the house shortly before the incident. He had one bedroom and Kahn had another one, but occasionally he spent the night with Kahn.

---

[1] She was convicted in 1990 and granted an out-of-time appeal by order of January 20, 1998.

[2] Although the specific ground argued here was not argued below in support of the motion for directed verdict and will not be considered here for the first time, we do address the legal sufficiency of the evidence.

On May 22, 1989, Kahn had been to Martin's prior residence looking for him, contending that he owed her money. After the children returned home from school, Kahn and Michael Chester arrived and Kahn began preparing dinner for the children.

Jeremy Patton was outside feeding 19 dogs in pens near the driveway when he saw Martin drive up about 7:30 p.m., followed by Garland in a separate car. Garland had assisted Martin in repairing a flat tire and offered to follow him home to make sure he arrived. Martin pulled behind the house, and Garland pulled in behind him. Martin told him to wait and went into the house.

Jeremy Patton told Kahn that Martin had arrived and returned to feeding the dogs. Chester and Corey Patton were watching television when Martin came in, acting very erratic and saying he had to get out of there because someone was going to kill him. Martin went into his room followed by Kahn. He gathered some clothing and headed back outside, followed by Kahn who demanded to know where he was going. Jeremy Patton and Garland heard the two yelling at each other. Martin went back in the house, again followed by Kahn. They came back out, with Martin carrying more clothing, still arguing. At that point, Kahn went back into the house and retrieved a shotgun she kept in her bedroom. She returned to the driveway and told Martin he was not leaving until she got her money.

Martin and Kahn then struggled over the shotgun, and Martin threw it into the grass. Martin and Kahn then fought, hitting each other and wrestling in the driveway, during which Martin slammed Kahn's head into a pickup parked there. Chester then came out and tried to stop the melee, but was knocked unconscious by Martin. While Martin was fighting with Chester, Kahn stood there until Chester was unconscious, whereupon she and Martin began fighting again.

At this point, Kahn told Corey Patton, who was now outside, to get her the shotgun. Martin then said "you want your gun, b----, I'll get it," and went back into the house. Kahn had a semi-automatic "mini .14" in the house, but when Martin came back out, he had nothing in his hands. While Martin was inside, Corey Patton retrieved the shotgun and gave it to Kahn. She broke down the shotgun to make sure it was loaded, popped it back up, and was holding it at her side when Martin came back out of the house. Opening the breech and closing it automatically engaged the safety, which then had to be manually removed. Martin stopped when he saw Kahn with the gun, and she told him if he came any further she would shoot him. Martin said "shoot me, you b----," and ran toward her with his fists raised. Kahn fired, striking Martin in his lower trunk, severing his right iliac artery.

Corey and Jeremy Patton ran to a neighbor and called police.

The evidence was legally sufficient. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Smith v. State*, 231 Ga. App. 677, 679 (499 SE2d 663) (1998); *In the Interest of F. L. P.*, 184 Ga. App. 164 (361 SE2d 43) (1987).

(b) After the police arrived, a sweep of the premises was made, and an officer found, on the dresser in Kahn's bedroom, a plastic bag containing a white residue which tested positive for cocaine. Kahn also gave a urine sample after the incident which contained a trace amount of cocaine.

Kahn's motion for directed verdict was premised on her and Martin's joint access to her bedroom where the bag was found. That there was equal access by Kahn and Martin, however, does not preclude the jury's concluding that there was at least joint possession of the contraband, justifying a conviction. As stated in *Wilson v. State*, 231 Ga. App. 525, 527 (1) (499 SE2d 911) (1998), " 'there is no requirement that the State must in every case prove that contraband was in the *exclusive* possession of one who is shown to be the owner or lessee of the premises. While evidence that the defendant-owner or lessee shared the premises with another does not demand a conviction, it may nevertheless authorize the jury, as the trior of fact, to find that the defendant was in at least *joint* possession of the contraband.' (Punctuation omitted.) *Love* [*v. State*, 227 Ga. App. 772, 773 (490 SE2d 527) (1997)]." Under such circumstances, denial of the motion for directed verdict was not error.

2. Kahn contends in her third enumeration that the trial court erred in denying her motion to exclude the testimony of the Georgia Crime Lab toxicologist regarding his testing of her urine because the report turned over to her did not quantify the nanograms per milliliter of cocaine found in the urine, as required by OCGA § 17-7-211[3] and *Durden v. State*, 187 Ga. App. 154 (1) (369 SE2d 764) (1988) and its progeny.

The lab report provided to Kahn stated that "immunoassay of the urine specimen indicates the presence of a trace amount of cocaine and-or cocaine metabolites, insufficient urine submitted for confirmation." This was also the only testimony given by the toxicologist.

" 'The proscription of (OCGA § 17-7-211) was applied in *Durden*, supra at 158, because "the scientific evidence which was denied to the defense, in fact comprised the entire substance of the State's case." Here, the State's evidence was not quantitative but related solely to whether the substance was or was not cocaine. Identity of

---

[3] This discovery statute was repealed in 1994, Ga. L. 1994, p. 1895, § 1, and has been replaced by the procedures of OCGA § 17-16-4.

the substance was the issue; quantity and quality were not. The report included what the expert testified, that the substance tested positive for cocaine. *Carson v. State*, 192 Ga. App. 52 (1) (383 SE2d 619) (1989) distinguished (*Durden* and the cases following it) as involving attempts to prove amount of substance and degree of impairment, so that merely reporting presence of substance was insufficient. In this case the State limited its examination of the expert to the identity of the substance, which conclusion was contained in the report. *Carson* controls.' " *Mathis v. State*, 204 Ga. App. 896, 898 (2) (420 SE2d 788) (1992).

Here, there was evidence that the plastic bag found on Kahn's dresser, as well as her urine, contained cocaine. No amount of cocaine or degree of impairment by it was required for the offense charged and there was no error.

3. The two indictments charging Kahn, one for the murder, felony murder, and aggravated assault charges and one for the possession of cocaine, were joined for trial at the State's request. Kahn's fourth enumeration is that the trial court abused its discretion in denying her motion to sever the indictments.

The premise for Kahn's argument regarding severance is that the trial court erred as urged in her second and third enumerations, which have been decided adversely to her in Divisions 1 and 2.

Additionally, there was no abuse of discretion in denial of her motion to sever the indictments for trial, since the charges all arose from the incidents of May 22, 1989, at her residence. *Jarrell v. State*, 234 Ga. 410, 412 (1) (216 SE2d 258) (1975); *Agony v. State*, 226 Ga. App. 330 (486 SE2d 625) (1997).

4. Finally, Kahn argues error in the court's failure to recharge the jury on "the principals [sic] of self defense (justification)" when the jury requested recharge on the offenses of aggravated assault and voluntary manslaughter.

"When the jury requests a charge or recharge on a particular point, the trial court has discretion to also give or not give additional instructions. [Cit.]" *Patterson v. State*, 264 Ga. 593, 594 (2) (449 SE2d 97) (1994).

In determining whether the recharge was erroneous, this Court must consider the original charge given as a whole as well as the recharge in light of the original charge. Here, the original charge was proper and complete, the jury's requests for reinstruction were very specific and the recharges given did include language regarding the defense of "justification." There was no error in not including the additional language urged by Kahn. *Miller v. State*, 221 Ga. App. 718, 719 (1) (472 SE2d 697) (1996).

*Judgment affirmed. Johnson, P. J., and Smith, J., concur.*

*Germano, Kimmey & Cheatwood, C. David Turk III*, for appellant.

*Garry T. Moss, District Attorney, Allen D. Morris, Assistant District Attorney*, for appellee.