A98A2292. CULBERSON v. THE STATE.
(512 SE2d 367)

RUFFIN, Judge.

A jury found Christopher Culberson guilty of two counts of aggravated assault. On appeal, Culberson challenges the sufficiency of the evidence for his convictions. For reasons which follow, we affirm.

" 'On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant . . . no longer enjoys a presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) [(1979)]. Conflicts in the testimony of the witnesses, including the State's witnesses, [are] a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.' [Cit.]" *Howard v. State*, 227 Ga. App. 5, 8 (6) (a) (488 SE2d 489) (1997).

Viewed in this light, the record shows that on May 29, 1997, Culberson and Wakevin Williams had plans to attend a concert that evening with Rob Stone. According to Williams, Culberson came to his house with a gun and told Williams that he wanted to rob somebody. They discussed locations that could be robbed. Williams then called Stone and told him that Culberson wanted to rob somebody. Williams testified that Stone suggested they rob Abrha Tamrat's store, which was around the corner from his apartment.

The three walked to the store with the purpose of robbing it to get money for the concert. Stone testified that Culberson was "hyper" and "jumpy" and said, "if anybody mess with me up there, I'm going

to kill them." According to Williams, they did not discuss specific plans for how they were going to rob the store until they reached a wooded area, which was less than 30 feet behind the store. Williams had the gun, and Culberson had its clip. Stone took the gun from Williams and the clip from Culberson, loaded the gun, and gave it back to Williams. Culberson advised Williams against going into the store and told[ him that he should wait until the owner came out and then shoot him in the leg.

Tamrat closed his grocery store around 11:00 p.m. As he walked to his car and started to open the door, Williams shot him in his chest and leg. Tamrat was unable to identify his assailants, but he could tell that the shots came from a wooded area near his store. After Tamrat was shot, Williams, Culberson, and Stone ran away from the store. Williams testified that he ran into the woods, where he tripped and fell and dropped the gun. When he got to Stone's apartment, he found Culberson already there, and Stone returned shortly thereafter. Williams stated that Culberson wanted to go back to the woods for the gun. On their way to look for the gun, the police stopped Culberson and Williams after someone pointed them out, and they were arrested.

Charles Oglesby testified that around 11:00 p.m. on the night of the shooting, he saw Culberson standing alone beside the apartment building, behind a bush, looking as if he were hiding. Jennifer Osterhout, who lived in the apartment complex near Tamrat's store, testified that as she and her husband were getting ready for bed, they heard something that sounded like "fire crackers." As they looked out their window, they noticed two men running. Osterhout later identified one of these men as Culberson. Culberson was charged with two counts of aggravated assault, and he was convicted as a party to these crimes.

Without citation to any authority, Culberson argues that the evidence, as outlined above, was insufficient to support his convictions. This contention is patently without merit. "A participant to a crime may be convicted although he is not the person who directly commits the crime. OCGA § 16-2-20. A person who intentionally aids or abets in the commission of a crime or intentionally advises, encourages, hires, counsels or procures another to commit the crime may be convicted of the crime as a party to the crime. Mere presence at the scene is not sufficient to convict one of being a party to a crime, but criminal intent may be inferred from conduct before, during, and after the commission of a crime. Whether [Culberson] was a party to the crime and aided and abetted [Williams] in the . . . aggravated assault[ ] or intentionally advised, encouraged, or counseled [Williams] to commit the crimes was a question for the jury." (Citations omitted.) *Burks v. State*, 268 Ga. 504, 505 (491 SE2d 368) (1997); see

also *Rivers v. State*, 229 Ga. App. 12, 14-15 (2) (493 SE2d 2) (1997).

In this case, there was ample evidence to show that Culberson aided, abetted, encouraged, advised, and counseled Williams in the commission of the crimes against Tamrat. See *Burks*, supra. It makes no difference that Williams, and not Culberson, fired the gun that injured Tamrat, because all that the State must prove is that Culberson and the others were acting in concert. See *Ford v. State*, 163 Ga. App. 745, 746-747 (296 SE2d 85) (1982) (" 'Once [a] common design is shown by evidence tending to indicate that the individuals have associated themselves together to do an unlawful act, any act done in pursuance of that association by any one of the associates, would, in legal contemplation, be the act of each of them.' [Cits.]").

Specifically, Culberson suggested to Williams in the first instance that they commit a robbery in order to get money for the concert they had planned to attend that evening. Culberson provided Williams the gun to commit that robbery. While walking to Tamrat's store, Stone testified that Culberson was acting "hyper" and that he threatened to shoot anyone who "messed with him." Culberson also gave the gun to Williams, and shortly before the shooting, he gave Williams the gun's clip, which was loaded with bullets. Culberson advised Williams to shoot Tamrat as he exited his store. After the shooting, Culberson advised Williams that they needed to find the gun because it had his fingerprints on it. Osterhout positively identified Culberson as one of the people she saw running from the area in which the shooting took place. Oglesby also testified that he observed Culberson hiding behind a bush when the police arrived at the scene.

The fact that Stone and Williams may have given contradictory, or even biased, testimony regarding Culberson's role in the armed robbery does not change our result. "Although the co-defendants each tried to appear less culpable than the other and in so doing disagreed on many points, their testimony with regard to [Culberson's] aid to them was sufficiently corroborative to establish that [Culberson] was a party to the [aggravated assault]." *Allen v. State*, 224 Ga. App. 324, 325 (3) (480 SE2d 328) (1997). For instance, Williams and Stone both testified that Culberson was with them throughout the entire incident, and that he wanted to return to the woods to retrieve the gun following the shooting. Both also testified that Culberson had the clip to the gun until shortly before the shooting. Moreover, "[t]he weight and credibility of witnesses are questions for the triers of fact; that some evidence offered by a witness seems contradictory to his own or to some other's, or incomplete or uncertain[,] does not automatically discredit the evidence given by that witness[,] for it is the function of the triers of fact to determine to what evidence it gives credence. It is not for us to determine or question how the jury resolved any apparent conflicts or uncertainties in the evidence. Rather, on appeal, we

indulge every contingency in favor of the verdict." (Citations and punctuation omitted.) *Norris v. State*, 220 Ga. App. 87, 88 (1) (469 SE2d 214) (1996).

Thus, upon viewing the evidence in the light most favorable to the jury's verdict, we find that there was sufficient evidence upon which a rational trier of fact could find Culberson guilty beyond a reasonable doubt as a party to the crime of aggravated assault. See *Burks*, supra; *Jackson v. Virginia*, supra.

*Judgment affirmed. Pope, P. J., and Beasley, P. J., concur.*

DECIDED FEBRUARY 16, 1999.

*Maryann F. Blend*, for appellant.

*J. Tom Morgan, District Attorney, Thomas S. Clegg, Noah H. Pines, Assistant District Attorneys*, for appellee.