## A99A1841. GLORE v. THE STATE.
(526 SE2d 630)

RUFFIN, Judge.

Hazo Glore appeals his conviction for aggravated assault, arguing that he was merely present at the scene of the crime and did not participate in any way. As there was sufficient evidence that Glore's role exceeded that of mere presence at the scene, and because Glore's other grounds for appeal lack merit, we affirm his conviction.

1. We evaluate Glore's challenge to the sufficiency of the evidence under the standard of *Jackson v. Virginia*,[1] construing the evidence in the light most favorable to the verdict.[2] We do not weigh the evidence or determine the credibility of the witnesses.[3] As long as some competent evidence — even though contradicted — supports each element of the State's case, we must affirm the judgment on the jury's verdict.[4]

Applying this standard, the evidence at trial was as follows. In December 1997, police conducted a "reverse sting" operation in a high-crime area of Cobb County. Four undercover officers posing as drug dealers stood on a corner attempting to sell fake crack cocaine to passersby, while other officers waited up the street to arrest any purchasers. Glore and a friend, Aric Milton, pulled into the parking lot of a strip mall across the street from the undercover officers. According to Glore, who was then 18, he and Milton were on their way to a nearby high school to pick up girls. First, however, they stopped at the strip mall to shine the car, which belonged to Milton, and to shop for clothes at one of the stores. Milton got out and began applying silicone to the top of the car, while Glore worked on one of the tires.

Officer Quinn Harris, dressed like a drug dealer, approached Milton and Glore and said, "Do you need anything? . . . Are you straight?" Harris testified that, in street lingo, his questions were an offer to sell drugs. Neither Milton nor Glore answered, so Harris began to walk away. Milton then opened the trunk of the car, took out a shotgun, and pointed it at Harris. Harris raised his hands in the air and backed away. According to Glore, Milton told Harris, "You are not going to rob me." Harris testified that Glore said to Milton, "Let's do this" or "Let's take care of him now," which Harris interpreted as a threat to his life. Harris also testified that Glore lifted his shirt as if reaching for a gun.

From his undercover position across the street, Officer David

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[2] *Culberson v. State*, 236 Ga. App. 482 (512 SE2d 367) (1999).
[3] Id.
[4] Id.

Gordon saw Harris raise his hands as Milton and Glore approached him "aggressively." Thinking Harris was in danger, Gordon ran toward him and yelled "Hey!" to alert other officers in the area. The yell distracted Milton, allowing Harris to grab a gun he had concealed in the small part of his back. Harris fired the gun at Milton and Glore, who both turned and fled. Other officers stationed nearby ran to the scene, chased Milton and Glore, and arrested them. The officers never saw Glore with a weapon and found no weapon on his person.

At the police station, Glore waived his *Miranda* rights and agreed to talk to police. Glore said that when Harris approached Milton and him, he thought Harris was trying to rob them. Glore explained that he had been robbed in the past after being approached in the same manner as Harris had approached them. He said he did not know that Milton was going to pull a gun on Harris, and he insisted that he never meant to rob Harris. Nevertheless, Glore told the officers that after Milton pulled the gun, he (Glore) asked Harris, "How much money you got on you?" Glore could not explain why he asked the question, stating only that he was trying to get away. In addition, Glore admitted that he said something to the effect of, "We'll take care of this right here," explaining that "you just get tired of people just walking up on you."

Glore and Milton were charged with the attempted armed robbery of Harris and aggravated assault by pointing a shotgun at Harris. They were tried together, with separate counsel. Glore testified at trial, and an audiotape of his conversation with police was played for the jury. Both defendants were found guilty of aggravated assault but acquitted of attempted armed robbery.

Glore asserts that the evidence shows, at most, that he was present at the scene when Milton decided to pull a gun on Harris. We have held repeatedly that mere presence at the scene of a crime is not sufficient evidence to convict a defendant of being a party to a crime.[5] A jury may infer criminal intent, however, from the defendant's conduct before, during, and after the crime.[6] Evidence that the defendant intentionally advised, encouraged, or counseled someone else to commit the crime is sufficient to sustain the defendant's conviction for that crime.[7]

Although the case was close, we find that there was sufficient evidence to conclude that Glore encouraged Milton to point the shotgun at Harris. Officer Gordon testified that *both* Milton and Glore approached Harris "aggressively." Harris testified that after Milton

---

[5] See, e.g., id.
[6] Id.
[7] See OCGA § 16-2-20 (b) (4).

pulled the gun, Glore said, "Let's do this" or "Let's take care of him now," implying a joint effort. Harris also testified that he saw Glore lift his shirt as though reaching for a weapon, suggesting an intent to scare or intimidate Harris. In addition, Glore admitted to police that he asked Harris, "How much money you got?" while Milton was pointing the gun. Although the jury acquitted Glore of attempted armed robbery, they could have interpreted Glore's question as further evidence of his intent to participate with Milton in the endeavor rather than remain a passive bystander. Finally, although Glore insisted that he wanted to leave the scene as soon as he saw the shotgun, there was evidence that he did not run until Harris started shooting at him. Thus, even though there was no evidence that Glore and Milton planned in advance to commit aggravated assault upon Harris, the jury was authorized under the circumstances to infer that once Milton pulled the gun, Glore encouraged him and participated in the act rather than passively standing by.

2. Glore contends that the trial court erred in recharging the jury. During deliberations, the jury sent the following question to the trial court: "Can we have the charges and legal explanations of the following charges reread to us. . . . Aggravated assault, crime of armed robbery. . . ." The trial court asked the jury foreperson whether the jury simply wanted the definitions of the crimes reread or whether they wanted something else. The foreperson said they wanted to hear the definitions again, and the judge then repeated them. Glore asserts that the recharge should have included instructions on party to a crime, the defenses of justification and mistake of fact, and mere presence and mere association — all of which were part of the original charge. We disagree.

When the jury requests a recharge on a specific point of law, "the trial court has discretion to also give or not give additional instructions."[8] We review the charges as a whole — including the initial charge — to determine whether the trial court abused its discretion in the scope of the recharge.[9] Here, the trial court initially instructed the jury fully on Glore's and Milton's defenses to the charges, and Glore does not object to those instructions. In response to the trial court's questions, the jury foreperson clarified that the jury wanted to hear only the definitions of the crimes charged. The record does not show that the jury was confused about the matters on which Glore sought recharges or that the trial court's repetition of the definitions of aggravated assault and armed robbery was misleading in any way.[10] Accordingly, we find no abuse of discretion.

---

[8] (Punctuation omitted.) *Kahn v. State*, 235 Ga. App. 229, 232 (4) (509 SE2d 137) (1998).
[9] Id.
[10] See *Miller v. State*, 221 Ga. App. 718, 720 (1) (472 SE2d 697) (1996). Compare *Miller*

3. Finally, Glore argues that the trial court erred in denying his claim of ineffective assistance of counsel. To prevail on this claim, Glore must show both that trial counsel's performance was objectively deficient and that this deficiency prejudiced his defense.[11] "There is a strong presumption that trial counsel's performance [fell] within the wide range of reasonable professional assistance, and that any challenged action . . . [was] sound trial strategy."[12] We must affirm the trial court's finding that counsel was effective unless it is clearly erroneous.[13]

Glore submits a laundry list of alleged errors by trial counsel, all of which we reject. Glore asserts that counsel met with him only twice before trial, failed to file any discovery motions, did not review the transcript of a probable cause hearing until the day before trial, failed to interview the witnesses for the State and for his co-defendant, did not request a *Jackson-Denno* hearing, did not listen to the audiotape of Glore's statement to police before trial, filed no written requests to charge, and did not reserve objections to the jury charges. Counsel testified, however, that he met with Glore three or four times outside of court, that he strategized regularly with Milton's attorney, that he read a transcript of the audiotape before trial, and that he made oral requests to charge which were all granted. Counsel explained that he had no reason to file discovery motions because the prosecutor sent him discovery materials and he reviewed the State's complete file at least twice before trial. He stated that he did not request a *Jackson-Denno* hearing or seek to suppress Glore's statement to police because he thought there were no grounds for doing so. As for counsel's failure to interview witnesses before trial, the State's witnesses — all law enforcement officials — gave detailed statements that were in the files reviewed by Glore's counsel, and Milton's sole witness was interviewed by Milton's attorney, who discussed the interview with Glore's counsel.

The trial court found that Glore's attorney was very effective, that his closing argument was "nothing short of brilliant," and that he almost won the case. The court further found that most of the actions challenged by Glore were matters of trial strategy. Finally, the court noted that counsel's failure to "fil[e] a half inch of discovery materials and fil[e] frivolous motions and so forth" did not make him ineffective. Based on the record, including counsel's unrefuted testi-

---

*v. State*, 236 Ga. App. 825, 830-831 (4) (513 SE2d 27) (1999) (where jury's question indicated confusion on the law of proximate cause, trial court erred by failing to instruct jury on that point).

[11] *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

[12] (Punctuation omitted.) *Sanders v. State*, 236 Ga. App. 578, 581 (2) (512 SE2d 678) (1999).

[13] Id.

mony at the motion for new trial hearing, we cannot conclude that the trial court's findings were clearly erroneous.[14] And even assuming counsel's performance was deficient, Glore has failed to show that the outcome of his trial would have been different but for counsel's actions.[15]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED DECEMBER 6, 1999 —
RECONSIDERATION DENIED DECEMBER 20, 1999.

*Amelia G. Pray*, for appellant.
*Patrick H. Head, District Attorney, Andrew J. Saliba, Debra H. Bernes, Maria B. Golick, Assistant District Attorneys*, for appellee.

---

[14] See, e.g., *Harper v. State*, 232 Ga. App. 224, 227 (2) (d) (501 SE2d 591) (1998); *Hightower v. State*, 227 Ga. App. 74, 79 (c) (487 SE2d 646) (1997) (physical precedent only).

[15] See *Sanders*, supra at 582.