35205.  DAVISON-PAXON COMPANY *v.* ARCHER  (Ux.).
35204.  DAVISON-PAXON COMPANY *v.* ARCHER.

DECIDED OCTOBER 14, 1954—REHEARING DENIED NOVEMBER 19, 1954.

*T. J. Long,* for plaintiff in error.
*Hewlett, Dennis, Bowden & Barton,* contra.

NICHOLS, J. 1. The allegations of the petitions show that the defendant operates a tearoom, in connection with its department-store business, to which the public is invited. Shortly after noon on August 5, 1949, the plaintiff, Mrs. Archer, went to the tearoom to eat her lunch. She ordered and was served creamed turkey on corn bread. When she had eaten about three-fourths of the food, "she felt a hard, sharp substance go down her throat." Shortly afterwards she began to suffer pain in her throat, and she coughed and spit up a large amount of blood. She went to her personal physician, who took her to Ponce de Leon Infirmary, where she underwent treatment to reduce the bleeding and close the wound in her throat. The object that caused the injury was a hard, sharp one; its exact identity is unknown to the plaintiff, since it passed from her mouth when she began to cough and spit up blood after the injury. The food contained the object and was made by the defendant for human consumption; it consisted of a thick cream mixed with small pieces of turkey meat, so that it disguised the object imbedded in the food. The object was introduced into the food by the defendant through its cooks and employees, who were negligent in handling and inspecting the food and allowed it to become adulterated. The food was not fit for human consumption. The plaintiff's injuries were caused by the defendant's negligence: (1) in failing to inspect the food to discover the harmful and deleterious object; (2) in failing to warn the plaintiff of the

presence of the sharp, hard object in the food; (3) in selling adulterated food to the plaintiff in violation of the laws of Georgia.

The defendant contends that, since the object is not identified, it must be construed to be something natural to the food being served which, although inedible, is not necessarily unfit for food, such as a cut or broken turkey bone. The defendant would not be liable for injuries caused by such an object. *Norris* v. *Pig'n Whistle Sandwich Shop,* 79 *Ga. App.* 369 (53 S. E. 2d 718). But the plaintiffs alleged facts showing why the object was not identified, and they contended, it may be seen, that the food was adulterated by the object which was characterized as harmful and deleterious. Food is adulterated, within the meaning of Code § 42-109, if it contains something "foreign" or "added." *H. J. Heinz Co.* v. *Fortson,* 62 *Ga. App.* 130 (8 S. E. 2d 443). Or it must appear that the object is a "portion of an animal unfit for food." Code § 42-109 (7). The petitions do not affirmatively show that the object was part of an animal fit for food, not foreign or added to the food, and not deleterious; and so the petitions may not be construed as alleging that the object was a piece of turkey bone, for the presence of which the defendant would not be liable. The plaintiffs were not required to negative the existence of such defensive matter in their petitions. The court did not err in overruling the motions to dismiss.

2. The defendant in the first special ground of each of its motions for new trial complains of the court's failure to charge the jury as to the measure of damages for temporary injury and disability. But this ground does not set out what the judge should have charged as the measure of such damages, and so it is too indefinite for consideration. *Lovett* v. *Sandersville R. Co.,* 72 *Ga. App.* 692, 699 (3) (34 S. E. 2d 664); *Atlas Auto Finance Co.* v. *Atkins,* 79 *Ga. App.* 91, 98 (8) (53 S. E. 2d 171); *Central of Ga. Ry. Co.* v. *Dumas,* 44 *Ga. App.* 152, 156 (17) (160 S. E. 814).

3. The court erred, as pointed out in the second special ground of each motion, in failing to charge the jury that the mortality tables were not to be used unless Mrs. Archer's injuries were permanent: *Western & Atlantic R. Co.* v. *Knight,* 142 *Ga.* 801 (83 S. E. 943); *Powell* v. *Jarrell,* 65 *Ga. App.* 453, 466 (16

S. E. 2d 198), and citations. The plaintiffs alleged that Mrs. Archer's injuries were permanent, and this allegation was denied by the defendant. The plaintiffs' expert witness testified to the effect that the injuries were permanent, while the defendant's expert reached the opinion, from his X-ray examination, that Mrs. Archer's esophagus was functioning normally, that lacerations from a foreign body would have healed in a few days, and that any inflammation existing at the time of the trial would be attributable to chronic disease rather than to laceration. This evidence raised an issue as to whether the plaintiff's injuries were permanent, and the court erred in not instructing the jury that the mortality tables were to be used only if they found Mrs. Archer's injuries to be permanent.

4. In the third special ground of the motion for new trial in the husband's suit, complaint is made that the court erred in failing to require the jury to reduce to present cash value any damages awarded for the loss of Mrs. Archer's services and consortium in the future. Although the court charged the jury with a method for reducing the value of Mrs. Archer's services to present cash value, the jury was not required to make the reduction. This was reversible error. *Central Truckaway System* v. *Harrigan*, 79 *Ga. App.* 117 (4) (53 S. E. 2d 186); *Central of Ga. Ry. Co.* v. *Keating*, 45 *Ga. App.* 811, 819 (10) (165 S. E. 873).

5. In the last special ground of each motion, the defendant complains of the "charge on the question of the permanency of the plaintiff's injuries" as being unauthorized by the evidence, and it is said that the evidence was insufficient to have authorized a finding by the jury that the plaintiff's injuries were permanent. In the previous ground of the motion in the husband's case we read: "Movant states as a fact that the jury could have found from the evidence of Mrs. Paul W. Archer and Dr. Edward S. Wright that the alleged injury complained of existed at the time of trial and would continue to exist in the future." Dr. Wright testified: "As to the permanency of the condition that Mrs. Archer is in now, I think she may always have this constriction." The evidence was sufficient to authorize a finding that the injuries were permanent, and these grounds are without merit.

6. As the case must be tried again, it is unnecessary to pass upon the general grounds of the motion for new trial. At the hearing upon these motions, the plaintiffs submitted affidavits of the twelve jurors who had tried the case, and the court, after allowing the defendant time in which to introduce counter-affidavits, ordered the affidavits filed as part of the record, over the defendant's objection that they were irrelevant, immaterial, and illegal. The affidavits were taken more than nine months after the trial, and were to the effect that the jury had found Mrs. Archer to be permanently disabled, and that the jury had not awarded any amount to the husband for the loss of his wife's services and consortium. Both verdicts were in the following form: "We the jury find for the plaintiff the sum of $ [differing amounts]."

The direct effect of the jurors' affidavits is to amend the verdicts into special findings of fact. Indirectly, the affidavits tend to "sustain" the verdict by showing that the errors by way of omissions in the charge, as complained of in the motions for new trial, were not prejudicial, but this is done by limiting, and thus impeaching, the general effect of the verdict as rendered.

Special verdicts are permissible in equity cases (Code § 37-1104), but not in cases involving no equitable relief. *Tufts v. DuBignon,* 61 *Ga.* 322 (2); *Central of Ga. Ry. Co.* v. *Americus Construction Co.,* 133 *Ga.* 392 (5) (65 S. E. 855). Code § 110-109 provides: "The affidavits of jurors may be taken to sustain but not to impeach their verdict," and § 110-111 further provides: "A verdict may be amended in mere matter of form after the jury have dispersed; but after it has been received and recorded, and the jury dispersed, it may not be amended in matter of substance, either by what the jurors say they intended to find or otherwise."

As stated in *Shelton* v. *O'Brien,* 76 *Ga.* 820, 822: "But the jurors cannot tell what they meant after their dispersion, says the statute, if it be matter of substance. . . Outside of the unmistakable language of the statute, such a construction of it is essential to public policy. To hold otherwise is to open the doors to tampering with the jury to induce a change of the verdict by invoking affidavits of their intention. It is against the spirit of the well-settled rule that they shall not impeach a

verdict after its delivery from the jury-box to the court. No good can come of the first step towards such evils. An inch will soon swell into an ell, and no bounds can well stay the flood. In the case at bar, of course nothing of the sort was done by party or counsel; but all parties and counsel, for all time to come, may not be above suspicion." We neither find in the record nor make any suggestion that tampering with the jury is involved in the present case; it is simply the ground of policy that lies behind the statute. As stated in *Anderson* v. *Green,* 46 *Ga.* 361, 375 (1): "To permit a party against whom a verdict is rendered, when it is plain and unambiguous in its terms and legal effect, to examine the jury as to their meaning, is to give great advantage to a litigant of influence and position in his county, when opposed by one of little or no influence. The jury room is the proper place for the jurors to give their views as to what the verdict should be, and having there come to a conclusion as to the rights of the parties, they have but one more duty to perform, and that is to return their finding into court. To suffer the jurors to be interrogated as to what legal effect their verdict is to have, is closely allied to, if not identical with calling a juror to impeach a verdict rendered by him. To justify such a course, the verdict must, at least, be so ambiguous as to convey no definite meaning upon one or more of the issues involved." Also see *Hilliard* v. *Arnold,* 147 *Ga.* 15 (1) (92 S. E. 634); *Mullins* v. *Christopher,* 36 *Ga.* 584 (4); *Settle* v. *Alison,* 8 *Ga.* 201 (52 Am. D. 393). The verdicts rendered in the present cases were unambiguous and sufficient to speak for themselves. The court should not have allowed and considered the affidavits submitted, and it was error to deny the motions for new trial.

*Judgments reversed. Felton, C. J., and Quillian, J., concur.*