72132, 72133. TETRAULT v. SHELTON; and vice versa.
(347 SE2d 636)

CARLEY, Judge.

Insofar as it is relevant, the procedural history of the instant appeals is as follows: Mrs. Shelton brought suit against Dr. and Mrs. Tetrault, alleging various claims. The case was tried before a jury. As to Mrs. Shelton's malicious prosecution claim, the trial court directed

a verdict in favor of both the Tetraults. As to Mrs. Shelton's claim for unpaid wages, the trial court directed a verdict in her favor. As to Mrs. Shelton's slander claim, the trial court directed a verdict in favor of Dr. Tetrault, but allowed the case to proceed to the jury as against Mrs. Tetrault. The jury returned a verdict in favor of Mrs. Shelton and against Mrs. Tetrault. The verdict included general damages, special damages, punitive damages and attorney fees.

In Case Number 72132, Mrs. Tetrault appeals from the judgment entered on the jury verdict as to Mrs. Shelton's slander claim. In Case Number 72133, Mrs. Shelton cross-appeals from the directed verdict that was granted to Dr. Tetrault on her slander claim.

### Case Number 72132

In related enumerations, Mrs. Tetrault raises the general grounds. A review of the transcript shows the following: Dr. and Mrs. Tetrault owned and operated a weight loss clinic. Mrs. Shelton was an employee of the clinic. On February 1, 1983, Mrs. Tetrault and Mrs. Shelton had a disagreement, and Mrs. Shelton was discharged. After Mrs. Shelton's employment was terminated, she undertook to remove certain items of her own personal property from the office at the clinic. In the process, Mrs. Shelton removed a set of shelves from their wall brackets and took them away. As the result, certain items belonging to the Tetraults were removed from the shelves and were left, according to Mrs. Shelton's own testimony, "not neatly stacked" on the floor. Mrs. Shelton asserts that, subsequent to this incident, she was slandered by statements made by the Tetraults which imputed to her the commission of the crime of criminal damage to property.

1. We note at the outset that, although Mrs. Tetrault did subsequently swear out a warrant for the arrest of Mrs. Shelton on a charge of criminal damage to property, the affidavit upon which the warrant issued affords no basis for a recovery under a defamation theory. See *Francis v. Wood*, 75 Ga. 648 (1885). Whatever tort claims may exist as the result of Mrs. Shelton's arrest, slander is not among them.

2. The only evidence potentially probative of slander are certain oral statements concerning the incident that Mrs. Tetrault made to a police officer and to an insurance agent. Turning first to the insurance agent, he testified that he had been asked by Mrs. Tetrault "to inspect some alleged damaged property. . . ." The agent did so and observed that some shelves had been "taken down and the contents of the shelves had been thrown on the floor." The agent was told by Mrs. Tetrault that "Jean Shelton did it." Although Mrs. Tetrault wanted to file a claim, the agent "saw no damage, no reason to turn a claim in. . . ." Thus, the evidence shows only that the agent was told

that Mrs. Shelton "did it." According to the agent's own observations, "it" was the removal of shelves and the throwing of their contents on the floor. Mrs. Shelton herself acknowledged that she had removed the shelves and had "not neatly stacked" their contents on the floor. Accordingly, it was entirely true that Mrs. Shelton had done "it." "The truth of the charge made may always be proved in justification of an alleged libel or slander." OCGA § 51-5-6. That Mrs. Tetrault may also have merely inquired of the agent whether "it" was such "alleged damaged property" as might be covered by her *insurance* did not impute the commission of a *crime* by Mrs. Shelton. See generally *Morrison v. Hayes*, 176 Ga. App. 128 (1) (335 SE2d 596) (1985).

Moreover, there is nothing which would authorize a finding that any statement made by Mrs. Tetrault to the insurance agent in connection with a possible claim was anything other than a good-faith privileged communication. See generally *Perry v. Brooks*, 175 Ga. App. 77, 80 (5) (332 SE2d 375) (1985). Contrary to appellee's assertions on appeal, "privilege" did not have to be specifically raised by Mrs. Tetrault's answer in order to become a viable issue on the trial of the case. See *Europa Hair v. Browning*, 133 Ga. App. 753, 756 (3) (212 SE2d 862) (1975). In fact, Mrs. Shelton herself raised the issue insofar as the pre-trial order in the case made specific reference to the applicability of OCGA § 51-5-9, which provides for a right of action for defamation in the event of malicious use of *privileged* communications. We find sufficient evidence of privilege but no evidence of malice. Accordingly, for this additional reason, the evidence regarding communications to the insurance agent afford no basis for a recovery by Mrs. Shelton for slander.

3. With regard to the police officer, he was told by Mrs. Tetrault that Mrs. Shelton "became irate and tore down some shelves. . . ." The officer himself observed a pile of pudding mix boxes on the floor but saw no damage "on the walls of the shelves" and no damage to the boxes themselves, although he "didn't dig down into the pile." According to Mrs. Shelton, the truth of the matter was that she had not been irate and that there had been no "ripping of shelves. . . ." She stated: "The pudding was taken from the shelves and [put] on the floor, [the boxes of pudding] were not neatly stacked and [she] did not stack it all up, but no damage [was] done whatsoever." Mrs. Shelton also acknowledged that she had told Mrs. Tetrault that she was taking the shelves even though "actually [Mrs. Tetrault] paid for [them]." The reason given for her announcement that she was going to take the shelves was that Mrs. Tetrault did not then have the "twenty-five dollars or something" that she owed to Mrs. Shelton's husband "as payment for their staining and installation and all . . . ."

The jury was authorized to believe Mrs. Shelton's version of the

events. Accordingly, the question becomes whether, under that version, Mrs. Shelton was slandered by a statement that she had become "irate and tore down some shelves. . . ." This statement was made to the officer who was actually observing the aftermath of the incident and did not attribute to Mrs. Shelton the perpetration of any criminal damage to the office *walls*. The statement implied no interference with or damage to any items in the office other than the shelving. It is undisputed that Mrs. Shelton did remove the shelves belonging to the Tetraults under circumstances which might be criminal. See *Davis v. State*, 167 Ga. App. 701 (1) (307 SE2d 272) (1983). Compare *Caswell v. Porter*, 51 Ga. App. 513 (180 SE 860) (1935). It is also undisputed that, when she left, items that belonged to the Tetraults and that had been sitting on the shelves were left "not neatly" stacked on the floor of Mrs. Tetrault's place of business. Under these circumstances, a statement that Mrs. Shelton had become irate and had "[torn] down some shelves" would not necessarily constitute an overstated defamatory characterization of the actual events. See generally *Anderson v. Fussell*, 75 Ga. App. 866 (2) (44 SE2d 694) (1947).

However, even if the communication to the officer was an overstatement, it related only to the emotion and fervor with which Mrs. Shelton may have accomplished her admitted acts. Under the circumstances, such an overstatement would constitute a privileged non-actionable communication, deviating from the "truth" according to Mrs. Shelton only in degree rather than in kind. See generally *Brown v. Scott*, 151 Ga. App. 366, 368 (259 SE2d 642) (1979). Mrs. Tetrault never directly accused Mrs. Shelton of being a thief or a vandal. Compare *Caswell v. Porter*, supra. She was privileged to make a good faith report to a police officer of *possible* criminal conduct on the part of Mrs. Shelton. "Communications which would otherwise be slanderous are protected as privileged, if made in good faith by the injured person in the prosecution of an inquiry regarding a crime *which he believes* to have been committed upon his property. . . ." (Emphasis supplied.) *Taylor v. Chambers*, 2 Ga. App. 178 (1) (58 SE 369) (1907). See also *Hardaway v. Sherman Enterprises*, 133 Ga. App. 181 (210 SE2d 363) (1974); *Arrowsmith v. Williams*, 174 Ga. App. 690, 692 (4) (331 SE2d 30) (1985). "After reviewing all of the evidence introduced in this case, which conflicted only on the issue of [the emotion and fervor with which the shelves and their contents were removed], we find nothing to indicate that [Mrs. Tetrault's] actions [in communicating with the officer] were undertaken maliciously or in reckless disregard of the truth. Instead, it appears uncontroverted that [she] acted in a good-faith attempt to protect [her property] from a *real or imagined* threat of injury." (Emphasis supplied.) *Brown v. Scott*, supra at 368.

From the record it is apparent that Mrs. Shelton's cause of ac-

tion, if any, would be based upon the fact that, notwithstanding the negative reaction given by the authorities who investigated the incident, Mrs. Tetrault escalated the controversy by actually swearing out a criminal arrest warrant against Mrs. Shelton. However, no claim based upon Mrs. Shelton's arrest is before us and the preliminary statements to the investigating officer afford no basis for a recovery under a slander theory. Accordingly, the judgment entered on the jury verdict on the slander claim is reversed.

4. No error is enumerated as to the directed verdict in favor of Mrs. Shelton for unpaid wages. Accordingly, the judgment in that regard is unaffected by the holding with regard to the slander claim.

### Case Number 72133

5. Mrs. Shelton asserts that the trial court erroneously directed a verdict in favor of Dr. Tetrault on her slander claim against him. The alleged slander was Dr. Tetrault's statement that criminal charges were about to be brought against Mrs. Shelton. The record shows that the statement was in fact true at the time it was made and criminal charges were in fact brought. It was not error to direct a verdict in favor of Dr. Tetrault. OCGA § 51-5-6. Compare *Witham v. Atlanta Journal*, 124 Ga. 688 (2) (53 SE 105) (1905). We note again that any possible tort occasioned by the actual bringing of those criminal charges is not an issue that is before us.

*Judgment reversed in Case Number 72132. Judgment affirmed in Case Number 72133. McMurray, P. J., and Pope, J., concur.*

DECIDED JUNE 23, 1986 —
REHEARING DENIED JULY 14, 1986 — 

*Don M. Jones*, for appellant.
*David S. Walker, Jr.*, for appellees.