A90A1012, A90A1013. KELLEY et al. v. RS&H OF NORTH CAROLINA, INC.; and vice versa.
(398 SE2d 213)

BEASLEY, Judge.

Appellee RS&H of North Carolina, Inc. ("RS&H"), a North Carolina corporation, entered into a contract with Southern Properties of Georgia, Inc., to provide engineering services for a proposed real estate development project in Gwinnett County. The contract was signed by appellant Kelley as president of Southern Properties of Georgia, Inc. Appellant MacConochie was a financial investor who signed an agreement with Kelley and other principals in the project to form a Georgia corporation or other entity to acquire and develop the property. The project was abandoned after Gwinnett County denied a zoning change.

Before signing the contract, Kelley as president of Southern Properties, Inc., a North Carolina corporation, applied to the Secretary of State of Georgia for a certificate of authority to do business in Georgia under the name Southern Properties of Georgia, Inc. Several weeks after the contract was signed, the certificate was denied due to a name conflict. Kelley then submitted a new application for a certificate of authority using the name Southern Properties of N. C., Inc., which was granted. RS&H did not discover that there was no Georgia corporation called Southern Properties of Georgia, Inc., until after its demand for payment under the contract was not met.

RS&H sued Kelley and MacConochie, contending that they were individually liable for $61,681.68 because they held themselves out to be officers and employees of a corporation they knew to be nonexis-

tent. The verdict was in favor of RS&H for $30,930.84 plus interest. Kelley and MacConochie contend that there is no legal basis for any personal liability on their part. RS&H cross-appeals from the amount of the judgment awarded.

### Case No. A90A1012

1. The essential issue was whether the appellants were acting as an existing North Carolina corporation or a fictitious nonexistent Georgia corporation.

"All persons who assume to act as a corporation before the Secretary of State has issued the certificate of incorporation to the incorporator or incorporators or their attorney shall be jointly and severally liable for all debts and liabilities occurred or arising as a result thereof." Former OCGA § 14-2-23. However, "[t]he existence of a corporation claiming a charter under color of law cannot be collaterally attacked by persons who have dealt with it as a corporation. Such persons are estopped from denying its corporate existence." Former OCGA § 14-2-23. "Although the Official Comment to OCGA § 14-2-23 specifies that the latter Code section was not intended to lessen the applicability of the estoppel by corporation doctrine, this court has held in no uncertain terms that the doctrine does not permit an individual to escape liability for obligations undertaken as an agent for a corporation which has not yet been 'registered' (i.e., issued a certificate of incorporation) by the Secretary of State. [Cits.]" *Video Power v. First Capital Income Properties*, 188 Ga. App. 691, 692 (1) (373 SE2d 855) (1988). If, then, Kelley and MacConochie were acting in behalf of an unregistered Georgia corporation, they are individually liable for its debts.

Appellants contend that they were acting for Southern Properties, Inc., an existing North Carolina corporation, and that Kelley signed the contract with RS&H for Southern Properties, Inc., using the misnomer of Southern Properties of Georgia, Inc. They argue that in such case, since the intent of the parties was to do business with an existing corporation, it made no difference what state it was incorporated in.

The applicable law is as follows: "In a situation where the existence of the corporate entity is questioned, the controlling factor in determining whether the estoppel doctrine applies is whether the entity *on whose behalf the person entering into the contract purported to act* had been issued a certificate of incorporation before the contract was executed. If not, then the contracting agent will be held personally liable for the obligations of the purported corporation thus incurred. [Cits.] . . ." " ' "The important thing is to determine what corporation the parties intended, for it is the intent of the parties

that controls. Error in the use of the corporate name will not be permitted to frustrate the intent which the name was meant to convey, and to find out the identity of the corporation intended, resort may be had to evidence *aliunde.*" (Cit.)' [Cit.]" (Emphasis supplied.) *Pinson v. Hartsfield Intl. Commerce Center,* 191 Ga. App. 459, 461 (382 SE2d 136) (1989).

RS&H's agents testified that they were repeatedly told by appellants that the entity with which they were contracting was a Georgia corporation, but the evidence is undisputed that this corporation never existed. The North Carolina corporation of the same name was not the one RS&H was dealing with, nor was it shown to be the one on whose behalf Kelley was purporting to act. Although Kelley claimed to be its president, he admitted that he had never drawn a paycheck, never appeared for work there and was unaware if it was still in business. He did not offer any proof that he had been elected its president or received any shares of its stock. For the jury to agree with appellants' argument, they would have had to find that RS&H entered into a contract with a corporation it never heard of and did not know existed. Representations purportedly made by the parties, as well as the intent of the parties, are jury questions. The evidence presented supported the verdict of the jury and must be affirmed. *Lissmore v. Kincade,* 188 Ga. App. 548 (1) (373 SE2d 819) (1988).

2. Appellants' remaining enumerations of error complain of jury instructions and the substitution during litigation of RS&H's accurate name. After considering the charge as a whole, including those instructions requested by appellants, we conclude that the trial court fully and accurately explained the respective positions of the parties and the law in regard to fictitious corporations and misnomers, which in summary is that if the appellants were acting as a North Carolina corporation they had no liability, but if they were acting on behalf of a nonexistent Georgia corporation they were personally liable under theories of contract, quantum meruit or account.

As to the misnomer, appellants have shown no harm to themselves to the extent that allowing the substitution of plaintiff's correct name was an abuse of discretion under the liberal policy of the CPA. *Franklyn Gesner Fine Paintings v. Ketcham,* 252 Ga. 537 (314 SE2d 903) (1984). Crucial is that at all times, throughout the transaction and litigation, it in fact existed.

*Case No. A90A1013*

3. RS&H's cross-appeal complains of a charge that if the jury found defendants liable to RS&H, they should "give the defendants credit for any payments received by [RS&H] with regards to the contract from any source, whether the payments were made in money or

by means of a promissory note or in some other manner." There was evidence that an agreement, covenant and promissory note had been entered into between RS&H and three North Carolina principals of Southern Properties, Inc., prior to the filing of the suit. The amount of the judgment was equal to that sought by RS&H minus the amount of the promissory note ($30,930.84) but for $6,823.91, representing the one payment which had been made.

RS&H contends that the charge misstated the law and in addition was inapplicable to the facts because there was no evidence that the note from the three North Carolina principals was accepted as payment or that the note discharged the original obligation, since the accompanying covenant recited that "in the event that there is a default in payment of the Promissory Note then this Covenant shall be null and void." Kelley and MacConochie contend that the jury charge was not erroneous because it indicated only that the giving of the note could constitute payment, and the covenant provided that the amount due was "being paid through delivery" of the note.

Bank checks and promissory notes are not payment for a debt incurred until themselves paid, "absent some express agreement or compelling circumstances which clearly indicates a contrary intention of the parties." *Walsey v. Alterman Foods*, 140 Ga. App. 270, 271 (231 SE2d 3) (1976). See also *Malak v. McGinnis*, 257 Ga. 622 (1) (361 SE2d 798) (1987); *Norton v. Paragon Oil Can Co.*, 98 Ga. 468 (1) (25 SE 501) (1896). The terms of the covenant state on the one hand that the amount due was being paid by delivery of the note, and on the other hand and immediately following that any default in payment nullified the covenant. These conflicting terms fail to create an express and clear agreement that the giving of the note would constitute payment. There are no compelling circumstances indicating such an intention of the parties in the settlement either. The charge falls short of adequately explaining the appropriate legal principle to the jury. As it was misleading and not a correct statement of the law, it constituted error.

The judgment must be reversed. Upon return, the trial court is authorized to grant RS&H a new trial unless defendants accept in a new judgment the amount awarded plus an amount equal to the unauthorized deduction of $24,106.93.

*Judgment reversed. Deen, P. J., and Pope, J., concur.*

DECIDED SEPTEMBER 11, 1990 —
REHEARING DENIED OCTOBER 11, 1990.

*Arnall, Golden & Gregory, James A. Gober*, for appellants.
*McReynolds & Boyd, J. Michael Welch, Frederic S. Beloin*, for

appellee.