A99A0414. SMITH v. VENCARE, INC.
(519 SE2d 735)

ELDRIDGE, Judge.

Portia Gardner Smith, wife of plaintiff-appellant Delarett Smith, suffered from a progressive neurological disease and had to have a tracheotomy that left her unable to speak, because she was on a ventilator. Communications were made by eye movement; however, on April 20, 1995, Glenda Ward, a respiratory therapist, placed a Passey-Muir valve into Mrs. Smith's tracheotomy tube, allowing her to speak after a fashion when the respirator was not in use. Thereafter, communication was by verbal "yes" or "no" responses to leading ques-

tions, by counting one to four for "no" and five to eight for "yes," or by eye movement.

In January 1995, Mrs. Smith was admitted to Vencor Hospital Atlanta. Vencor Hospital was owned and operated by Vencor, Inc. Vencare, Inc. is a separate and distinct legal entity from Vencor, Inc. No employees or agents of Vencare, Inc. were involved with Mrs. Smith or the plaintiff. On April 20, 1995, and until May 31, 1995, Vencor Hospital refused to allow plaintiff to see his wife.

Ms. Ward testified that, when Mrs. Smith could speak for the first time, Mrs. Smith told her that plaintiff had hurt her in the past, he was trying to kill her, and she was afraid of him and did not want him to visit her. Mrs. Smith asked for Hank Selinger, the hospital social worker, and told him the same things about plaintiff in Ms. Ward's presence. Selinger, in Ms. Ward's and Hospital Security/ Safety Manager Ernest Carter's presence, heard Mrs. Smith respond "no" to the question did she want the plaintiff to visit her and "yes" to the questions was she afraid of plaintiff and did she want Adult Protective Services contacted regarding plaintiff. On April 20, 1995, Dr. David N. DeRuyter, Mrs. Smith's attending pulmonary therapist, who had a problem with the plaintiff regarding the manipulation of his wife's shoulder, learned through communication with Mrs. Smith that she was afraid of the plaintiff and that she did not want to be alone with him.

The psychologist evaluating Mrs. Smith for the Probate Court of Fulton County found that she had an undeterminable, residual mental status and that she was "unable to formulate and communicate rational, informed decisions concerning her person or property." On April 20, 1995, when Mrs. Smith was evaluated as to mental status, she responded that her name was Portia Smith; that the year was 1991, but with prompting 1994; and that her location was the hospital. On April 21, 1995, Selinger talked to Mrs. Smith again, and she told him the names of her brother, Harvey Gardner, who lived in East St. Louis, Illinois and her sister, Harriett Lacy. On the same day, Selinger contacted Gardner and Lacy and told them what Mrs. Smith told him about plaintiff. Selinger claimed that Gardner and Lacy told him that they did not trust the plaintiff and that plaintiff may have poisoned their sister.

Selinger reported Mrs. Smith's statements and fears to Skip Wright, the hospital administrator. To protect Mrs. Smith and at her specific request, plaintiff's visiting rights were suspended. Selinger also told others who cared for and protected Mrs. Smith of the concerns raised by Mrs. Smith and Mrs. Smith's siblings.

Mercedes Murrell, the court-appointed guardian, testified that "Vencor Hospital employees who were present in the room when I went to visit Portia Smith told me that they believed Delarett Smith

[plaintiff] was abusing his wife and that he had attempted to kill her by putting rat poison in her feeding tube. However, when I asked them if they had performed any tests to determine if Portia Smith had in fact been poisoned, they responded 'No.' "

On April 19, 1996, plaintiff sued Vencare, Inc. doing business as Vencor Hospital, Selinger, and two "John Doe" defendants in the State Court of Fulton County for slander and for loss of consortium. On September 16, 1997, Vencare, Inc. and Selinger moved for summary judgment. Vencare, Inc. raised the defense that it was not a proper party to the suit. On October 20, 1997, plaintiff filed a motion to amend his complaint, add additional defendants, Vencor, Inc., Ward, and Wright, drop Vencare, Inc., and to strike Selinger's affidavit. On April 15, 1998, after oral argument, the trial court denied plaintiff's motions and granted summary judgment to the defendants. On May 14, 1998, plaintiff filed his notice of appeal.

1. Plaintiff contends that the trial court erred in failing to strike the portions of Selinger's testimony which conflicted with his earlier testimony. We do not agree.

Plaintiff contends that Selinger's second affidavit conflicts with the first affidavit, his interrogatory answers, and his notes attached to the affidavit, because such earlier testimony failed to state that Mrs. Smith's siblings or family told Selinger that plaintiff may have poisoned his wife.

> The rule in Georgia is that the testimony of a party who offers himself as a witness in his own behalf at trial is to be construed most strongly against him when it is self-contradictory, vague or equivocal. Where the favorable portion of a party's self-contradictory testimony is the only evidence of his right to recover or of his defense, the opposing party is entitled to a directed verdict.

(Citations and punctuation omitted.) *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28 (1) (343 SE2d 680) (1986).

> In each case, whether on motion for summary judgment or at trial, it must be decided if the testimony of a party-witness is contradictory. On summary judgment this is a question for the judge to decide. It is contradictory if one part of the testimony asserts or expresses the opposite of another part of the testimony.

Id. at 30 (2).

> *Prophecy Corp.* rests on the principle that a party knows what he has sworn and may not swear in contradiction to

that which he has sworn to be true without explanation. The rule was not intended to apply to an unsworn statement of a party-witness, and we decline to so extend it.

(Citations omitted.) *Shiver v. Norfolk-Southern R. Co.*, 269 Ga. 168, 169-170 (496 SE2d 903) (1998). Thus, the rule under *Prophecy Corp.* is narrower than for impeachment by prior inconsistent or conflicting statements.

"As the absence of the additional facts in a prior statement given by the State's witness fails to amount to a contradiction of her trial testimony, there could be no impeachment under OCGA § 24-9-83[.]" (Citations and punctuation omitted.) *Weathers v. State*, 198 Ga. App. 871 (2) (403 SE2d 449) (1991); accord *Shearer v. State*, 259 Ga. 51, 52 (5) (376 SE2d 194) (1989); *England v. Ga.-Fla. Co.*, 198 Ga. App. 704, 707 (5) (402 SE2d 783) (1991).

To constitute a self-contradiction it is not a mere difference of statement that suffices; nor yet is an absolute oppositeness essential; it is an *inconsistency* that is required. As a general principle, it is to be understood that this inconsistency is to be determined, not by individual words or phrases alone, but by the whole impression or effect of what has been said or done.

(Citations and punctuation omitted; emphasis supplied and omitted in part.) *Hightower v. State*, 227 Ga. App. 74, 77 (487 SE2d 646) (1997).

Therefore, if the more expansive definition of contradictory or inconsistent statement for purposes of impeachment does not include omissions from earlier statements as constituting a "contradiction," then, for purposes of the more restrictive *Prophecy Corp.*'s "contradictory, vague and equivocal" standard, the same criteria should apply. Further, the facts omitted from the earlier statements and testimony do not cause a conflict with the latter testimony; such testimony is merely fuller, more expansive, and complete. Therefore, the trial court did not err in denying the motion to strike Selinger's affidavit.

2. Plaintiff contends that the trial court erred in granting Selinger's motion for summary judgment based on the defense of privilege. We agree.

Harriet Lacy testified that she did not tell Selinger that she did not trust the plaintiff or that she or the family believed that the plaintiff had poisoned her sister. Norma Frye testified that, on either April 21 or 22, 1995, she went to see Mrs. Smith and asked her if she was afraid of the plaintiff and if he had hurt her, to which questions Mrs. Smith indicated no. Howard Smith, plaintiff's brother, testified

that, on either April 21 or 22, 1995, he visited Mrs. Smith and asked her if she wanted to see the plaintiff, to which she indicated yes. She also indicated that the plaintiff had never hurt her and that someone in the hospital was trying to hurt her. Such evidence conflicts with defendants' evidence, creating a jury question as to whether Mrs. Smith made the statements, and if she made the statements, whether she was competent and credible, because her alleged statements were in direct conflict.

Plaintiff testified that Harvey Gardner had not seen Mrs. Smith since the fall of 1993. Thus, Gardner was not in a position to render any reasonable opinion as to the care and treatment of his sister or her possible poisoning by plaintiff.

(a) Such testimony of the plaintiff's witnesses and defense witnesses are in direct contradiction to what Mrs. Smith indicated in communication to each of them. Since the questions were in each case leading, requiring either a yes or no answer, and Mrs. Smith had, at a minimum, a confused mental status, then all of her statements were questionable as to truth, accuracy, or reliability. Mrs. Smith's mental status was that of a frightened, suffering, terminally ill person with poor oxygen supply to the brain, as indicated by the necessity of the respirator. The conflicts in her statements created a dispute as to a material issue of fact as to good faith privilege and a jury question as to whether Mrs. Smith made the statements and whether her mental status was such that the statements were not credible. The trial court must draw all reasonable, favorable inferences in favor of the respondent on summary judgment, which was not done by the trial court. OCGA § 9-11-56 (e); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

(b) However, assuming that Harriet Lacy and Harvey Gardner did, in fact, make the statement to Selinger that they did not trust the plaintiff and that the plaintiff may have poisoned his wife, and assuming likewise, that the statements of Mrs. Smith were made, such statements cannot be taken at face value, but must be examined in the exercise of ordinary care to determine if they are reasonable or the product of a delusional, terminally ill woman on a respirator.

(c) For the defense of qualified privilege to exist, it must be made: (1) *in complete good faith*; (2) with an interest to uphold; (3) by a statement properly limited in scope; (4) on a proper occasion; and (5) by publication to a proper person. *Baskin v. Rogers*, 229 Ga. App. 250, 253 (4) (493 SE2d 728) (1997); *Sherwood v. Boshears*, 157 Ga. App. 542, 543 (278 SE2d 124) (1981); *Land v. Delta Airlines*, 147 Ga. App. 738 (250 SE2d 188) (1978); *Lamb v. Fedderwitz*, 71 Ga. App. 249 (30 SE2d 436) (1944). Where the communication is not fair and honest, the qualified privilege does not exist. *Finish Allatoona's Inter-*

*state Right v. Burruss*, 131 Ga. App. 572, 575 (1) (206 SE2d 679) (1974); see also *Horton v. Georgian Co.*, 175 Ga. 261, 273-274 (4) (165 SE 443) (1932). In this case, the inquiry focuses on the element of good faith, alone.

> The absence of any one or more of these [five] constituent elements will, as a general rule, prevent the party from relying upon the privilege. All these questions are, however, generally questions of fact for a jury to determine according to the circumstances of each case. [Cit.]

*Duchess Chenilles, Inc. v. Masters*, 84 Ga. App. 822, 829 (4) (67 SE2d 600) (1951).

The absence of a good faith belief in the truth of a slanderous statement prevents a qualified privilege. *Baskin v. Rogers*, supra at 253. Likewise, the failure to exercise ordinary care to reasonably ascertain the truth or accuracy of the statement may show a lack of good faith when the facts and circumstances require such exercise. *Triangle Pub. v. Chumley*, 253 Ga. 179, 180-182 (1) (317 SE2d 534) (1984); *Diamond v. American Family Corp.*, 186 Ga. App. 681, 683 (368 SE2d 350) (1988); *Minton v. Thomson Newspapers,* 175 Ga. App. 525, 527 (333 SE2d 913) (1985).

(d) Thus, the question becomes whether or not such statements could become the basis for a good faith privilege, absent the exercise of ordinary care to determine if it was reasonable to rely upon such statements without further investigation into their truth prior to republication. Inquiry into the standard of ordinary care asks what same or similarly situated persons would do who assert such conditional privilege prior to republication. While the standard of ordinary care applies to defamation by publishers or broadcasters in regard to private individuals, such standard is also appropriate to determine the element of good faith for the protection of a conditional privilege. OCGA § 51-5-7 (2), (3); *Triangle Pub. v. Chumley*, supra at 180-182 (1); *Diamond v. American Family Corp.*, supra at 683; *Minton v. Thomson Newspapers,* supra at 527.

> Not only was the publication thus conditionally privileged but the law does not require a publisher to conduct an independent investigation unless the [original statement] was such as to raise serious doubts as to the truth of the [statement]. *St. Amant v. Thompson*, 390 U. S. 727, 733 (88 SC 1323, 20 LE2d 262) [(1968)]. See also *Williams v. Trust Co. of Ga.*, 140 Ga. App. 49, 55 (230 SE2d 45) [(1976)].

*Minton v. Thomson Newspapers*, supra at 527. Absent such requirement to exercise ordinary care, one possessed of a conditional privi-

lege can with impunity republish what is prima facie defamatory, what is an obvious mistake, or what comes from a patently unreliable source, i.e., a known enemy; political rival; a romantic rival; a mentally ill, mentally impaired, sick, or incompetent person; or someone under the influence of drugs or alcohol. Accordingly, whether or not Selinger had a qualified privilege to repeat such statements depends upon the reasonableness of assigning credibility to the statement.

Under the facts and circumstances, the issue is whether a reasonable person would make further inquiry prior to republication of the statements, or whether the statements were republished with a reckless disregard as to whether or not it was false. *Sherwood v. Boshears*, supra at 543; *Duchess Chenilles, Inc. v. Masters*, supra at 829 (4).

> But "talebearers are as bad as talemakers." Every repetition of a slander originated by a third person is a wilful publication of it, rendering the person so repeating it liable to an action, and it is no defense that the speaker did not originate the slander, but heard it from another, even though he in good faith believed it to be true.

(Citations and punctuation omitted.) *Baskin v. Rogers*, supra at 252. Thus, an individual cannot have exercised good faith for a conditional privilege when they republish unreasonable statements or statements obtained under circumstances that would put a reasonable person on inquiry as to the truth and accuracy of the statement. Publication of a statement "with reckless disregard as to whether or not it was false" cannot be complete good faith for purposes of a qualified privilege. OCGA § 51-5-7; *Sherwood v. Boshears*, supra at 543; see also *Baskin v. Rogers*, supra at 252. This is a matter for jury determination.

(e) Also, the record showed that plaintiff had difficulties and confrontations with Selinger and other Vencor Hospital staff from the beginning of the hospitalization in January 1995, and plaintiff wanted to remove his wife from its care.

Plaintiff testified that he had a number of disagreements with Selinger and the Vencor Hospital staff that led him to make complaints regarding the care and treatment of Mrs. Smith prior to April 20, 1995. On February 27, 1995, plaintiff told Selinger that he wanted Mrs. Smith discharged for treatment at home, and again on March 30, 1995, after a confrontation with Selinger over visitation times, plaintiff demanded that she be discharged to home care. Plaintiff had disputes with staff over: (1) whether he caused the injury to Mrs. Smith's shoulder while conducting range of motion exercises; (2)

when he could visit his wife; (3) the fact that plaintiff was stuck by a used surgical needle left in a chair; (4) the fact that his wife had a nick and big bruise on her scalp; and (5) that the level of care given to Mrs. Smith by the staff was inadequate. These facts raised the inference of loss of revenue for Vencor Hospital, and the existence of bad motives for the defendants' actions in making the statements to justify limiting plaintiff's access to his wife and to make it easier to manage the care of Mrs. Smith without the plaintiff's interference. The trial court failed to make such inferences favorable to the plaintiff when it found good faith privilege entitled the defendants to summary judgment.

"Aside from consideration of the other criteria, the record contains no evidence supporting a good faith belief by [Selinger] that [plaintiff had attempted to poison his wife by putting rat poison in her feeding tube]." *Baskin v. Rogers*, supra at 253; see also *Kennedy v. Johnson*, 205 Ga. App. 220, 223 (3) (421 SE2d 746) (1992). Thus, plaintiff produced some evidence challenging and rebutting the good faith conditional privilege, and raising issues as to why there was no good faith. When there has been some evidence introduced by the plaintiff showing the lack of good faith on the part of the defendants in making the slanderous statements, summary judgment must be denied. *Davis v. Trusthouse Forte Hotels Worldwide,* 195 Ga. App. 768, 769 (2) (395 SE2d 235) (1990); *Tetrault v. Shelton*, 179 Ga. App. 746, 748 (2) (347 SE2d 636) (1986); *Arrowsmith v. Williams*, 174 Ga. App. 690, 693 (4) (331 SE2d 30) (1985); *Cleveland v. Greengard*, 162 Ga. App. 201, 202 (290 SE2d 545) (1982); *Hardway v. Sherman Enterprises,* 133 Ga. App. 181, 182 (210 SE2d 363) (1974).

"Even assuming, arguendo, that the statement was so privileged, this privilege is conditional rather than absolute, *Fedderwitz v. Lamb*, 195 Ga. 691 (25 SE2d 414) (1943), and it remains for a jury to determine whether the intention was such as to make the defense complete. *Holmes v. Clisby*, 118 Ga. 820, 825 [(2)] (45 SE 684) (1903)." *Watkins v. Laser/Print-Atlanta,* 183 Ga. App. 172, 174 (3) (358 SE2d 477) (1987); accord *Cohen v. Hartlage*, 179 Ga. App. 847, 849 (348 SE2d 331) (1986).

3: Plaintiff contends that the trial court erred in denying his motion to substitute Vencor, Inc., for Vencare, Inc., and in denying his motion to add Skip Wright and Glenda Ward as substitutes for John and Jane Doe. We agree in part and disagree in part.

(a) Since no pretrial order had been entered prior to plaintiff's amendment seeking to add additional parties, then leave of the trial court was not necessary to amend the complaint. OCGA § 9-11-15 (a); *Clover Realty Co. v. Todd*, 237 Ga. 821 (229 SE2d 649) (1976); *Newbern v. Chapman Funeral Chapel*, 158 Ga. App. 790 (282 SE2d 379) (1981). However, OCGA § 9-11-15 (a) must be read in pari materia

with OCGA § 9-11-21 when a new party is added, dropped, or substituted for an existing party, and leave of the trial court must be obtained to add a new party. *Clover Realty Co. v. Todd,* supra at 822; *Young v. Rider,* 208 Ga. App. 147, 148 (1) (430 SE2d 117) (1993); *Dollar Concrete Constr. Co. v. Watson,* 207 Ga. App. 452, 453 (428 SE2d 379) (1993); *Slater v. Brigadier Homes,* 198 Ga. App. 67, 68 (400 SE2d 338) (1990). Among the factors that the trial court must consider in allowing such amendment adding a new party for another party is the prejudice to the new party and the reasons and justifications for failure to include these parties in the original suit. *Aircraft Radio Systems v. Von Schlegell,* 168 Ga. App. 109, 111 (2) (308 SE2d 211) (1983). The trial court must exercise its sound discretion in allowing the addition of parties, and denial of joinder is an abuse of discretion where delay is the sole reason for denial; there must be more shown, i.e., prejudice to the additional defendant by delay. *Shiver v. Norfolk-Southern R. Co.,* 220 Ga. App. 483, 484 (469 SE2d 769) (1996). Where the statute of limitation has not run as to a theory of recovery, an amendment allowing joinder of an additional party does not prejudice the party's rights to a defense on the merits. *Bil-Jax, Inc. v. Scott,* 183 Ga. App. 516 (359 SE2d 362) (1987). Where the correct defendant was served or acknowledged service, an amendment to correct the real identity of this defendant is not a change of parties, but a correction of a misnomer, even if the statute of limitation has run. *London Iron & Metal Co. v. Logan,* 133 Ga. App. 692, 695-696 (2) (212 SE2d 21) (1975). Where the defendants can show no harm, the correction of a misnomer of a corporation's correct name is not an abuse of discretion. *Kelley v. RS & H of N. C., Inc.,* 197 Ga. App. 236, 238 (2) (398 SE2d 213) (1990). The correction of a misnomer involves no change of parties and does not add a new and distinct party. *Abbott v. Gill,* 197 Ga. App. 245, 246 (398 SE2d 225) (1990). However, where there is an actual corporation by the same name as the alleged misnomer, there is no simple correction of the name as a misnomer under OCGA § 9-10-132 but a change in actual parties, requiring the appropriate procedure, because the plaintiff has sued the wrong corporate entity. OCGA §§ 9-10-132; 9-11-15 (c); 9-11-17; 9-11-21; *Dollar Concrete Constr. Co. v. Watson,* supra at 454; *U. S. Xpress v. W. Timothy Askew & Co.,* 194 Ga. App. 730 (391 SE2d 707) (1990); accord *Pacific Nat. Fire Ins. Co. v. Cummins Diesel of Ga.,* 213 Ga. 4 (96 SE2d 881) (1957); *Nelson v. Sing Oil Co.,* 122 Ga. App. 19, 20-21 (176 SE2d 227) (1970); *Lamas Co. v. Baldwin,* 120 Ga. App. 149, 150 (1) (169 SE2d 638) (1969); cf. *Franklyn Gesner Fine Paintings v. Ketcham,* 252 Ga. 537, 539-540 (314 SE2d 903) (1984).

Thus, in this case, plaintiff sued the wrong corporate entity, sought to add the correct party, and drop the wrong party. When Ven-

care, Inc., was served on April 30, 1996, within the statute of limitation, which began to run on the slander on the first republication on April 20 and republication again on May 13, 1995, this placed Vencor, Inc., on notice that it was the true defendant, but for an error under OCGA § 9-11-15 (c). Further, defense counsel, by his affidavit and attached exhibits indicated on June 3, 1996, that Vencor, Inc., and Vencare, Inc., were different corporate entities; that he was representing Vencare, Inc.; and that he would accept service for Vencor, Inc. Thus, the requirements of reasonable notice prior to the running of the statute for slander and for loss of consortium were satisfied. In addition, no prejudice resulted to the defense on the merits. Finally, knowledge that Vencor, Inc., was the true defendant had been satisfied on October 20, 1997. See *Robinson v. Piggly Wiggly of Calhoun*, 193 Ga. App. 675 (388 SE2d 754) (1989); *Trillium Nursing Home v. Thebaut*, 189 Ga. App. 411 (375 SE2d 888) (1988); *A. H. Robins Co. v. Sullivan*, 136 Ga. App. 533 (221 SE2d 697) (1975); *Rich's, Inc. v. Snyder*, 134 Ga. App. 889 (216 SE2d 648) (1975).

Also while the untimeliness of the motion without justification prevents the trial judge's denial as to the slander claim from being an abuse of discretion, *Aircraft Radio Systems v. Von Schlegell*, supra at 111, the denial as to the *loss of consortium claim*, which is now well within the statute of limitation, arose from the same occurrence. Thus, there was notice within the statute of limitation, the same counsel represented both corporations, and Vencor, Inc., should have known that there was a mistake in corporate identity, so that the mistake should not have delayed the trial of the case. Dismissal of the entire case as to all parties was an abuse of discretion, because the trial judge determined as a matter of law that plaintiff had no legal claim for loss of consortium, absent a personal injury to her, by the alleged tortious separation from his wife. *Shiver v. Norfolk-Southern R. Co.*, supra at 484. Thus, the trial court's order shall be vacated and an order not inconsistent with this opinion entered allowing Vencor, Inc. to be made an additional party defendant on the claim for only tortious loss of consortium.

(b) "Where another [ ] wilfully and intentionally, through mechanism, enticement, seduction, and other wrongful means, interferes with this relation[, i.e., consortium with a wife,] he deprives the husband of the consortium of the wife, and the husband has a right of action against him in damages therefor. [Cits.]" *McMillan v. Smith*, 47 Ga. App. 646 (1) (171 SE 169) (1933). While loss of a wife's consortium by a husband generally arises out of a personal injury to the wife, any tort that deprives a husband of such property right gives him a right of action for such damages to his rights as shown by the evidence. Id.; see also *Pekrol v. Collins*, 122 Ga. App. 642, 643-644 (178 SE2d 294) (1970); *Chandler v. Gately*, 119 Ga. App. 513, 525 (5)

(167 SE2d 697) (1969); *Pinkerton Nat. Det. Agency v. Stevens,* 108 Ga. App. 159, 161-163 (1) (132 SE2d 119) (1963); *Davison-Paxon Co. v. Archer,* 91 Ga. App. 131, 134 (4) (85 SE2d 182) (1954). Whether or not plaintiff could have been lawfully excluded from the hospital, depriving him legally of the same rights of consortium, would be a defense in mitigation of damages, not properly to be considered on motion to add a party.

When there is a substitution by amendment of a "John Doe" or "Jane Doe" named in the original complaint for the real defendant, OCGA § 9-11-21 does not apply, and OCGA § 9-11-15 (c) is applicable; therefore, leave of court is not necessary for the substitution. Plaintiff in his amendment justified the delay by asserting that these unknown parties were identified through discovery. Therefore, leave of the trial court is not necessary to make such amendment, and the amendment becomes effective when filed. After such amendment has been made, the trial court shall determine if the conditions of OCGA § 9-11-15 (c) allow the amendment to relate back where the statute of limitation has run on a theory of recovery. *Bishop v. Farhat,* 227 Ga. App. 201, 202-203 (1) (489 SE2d 323) (1997). Since no order to add such parties was necessary, then the denial of the right to add the additional parties will be treated as a dismissal after the trial court has made such determination that there should be no relation back. OCGA § 9-11-15 (c); *Bishop v. Farhat,* supra at 202-203.

The statute of limitation for slander as an injury to reputation is one year; however, a tortious act that involves loss of consortium is four years from the accrual of the right of action. OCGA § 9-3-33. Thus, an action for slander against either Skip Wright or Glenda Ward is barred, but for the relation back to filing. See OCGA § 9-11-15 (c); *Hill v. Crabb,* 166 Ga. App. 387, 388 (304 SE2d 510) (1983); *Davis v. Hosp. Auth. of Fulton County,* 154 Ga. App. 654, 656 (3) (269 SE2d 867) (1980). Such additional defendants' rights to defend on the merits would be impaired for such claim relating back where they were not on actual notice of the pendency of such action prior to the running of the statute of limitation, and it has not been shown that they should have known, but for an error, that they would have been named as defendants. See *Sargent v. Dept. of Human Resources,* 202 Ga. App. 874-875 (415 SE2d 918) (1992). The evidence does not support the relation back after the statute has run, and the trial court did not err in dismissing the action for slander against them. OCGA § 9-11-15 (c); *Robinson v. Piggly Wiggly of Calhoun,* supra at 675; *Trillium Nursing Home v. Thebaut,* supra at 411; *Rich's, Inc. v. Snyder,* supra at 889. Notice of the incident does not satisfy the requirement that there be notice of the suit prior to the running of the statute. *Hall v. Hatcher Sales Co.,* 149 Ga. App. 133, 134 (1) (253 SE2d 812) (1979).

However, any action against them for tortiously causing a loss of consortium was asserted by amendment within the four year period from the date that the action accrued on April 20, 1995, and was not barred. Their rights to defend on the merits were not prejudiced by their joinder. See *Central of Ga. R. Co. v. Harbin*, 132 Ga. App. 65-66 (207 SE2d 597) (1974); *Humble Oil & Ref. Co. v. Fulcher*, 128 Ga. App. 606, 609 (3) (197 SE2d 416) (1973). Therefore, the trial court committed plain error in dismissing the action against them for loss of consortium by denying the joinder. The order denying joinder as to Ward and Wright is hereby vacated as to the tortious interference with plaintiff's right of consortium.

*Judgment affirmed in part and reversed in part, and case remanded with directions. Pope, P. J., concurs. Smith, J., concurs specially.*

SMITH, Judge, concurring specially.

I concur in the result reached in each of the divisions of the majority opinion and in the judgment, but I do not agree with all that is said in Divisions 2 and 3. Because I believe that they contain much that is not necessary to the analysis, I cannot concur fully and must concur in the judgment only as to those divisions.

DECIDED JUNE 23, 1999.

*Melanie A. Brubaker, Joan R. Turbyfield,* for appellant.
*Alston & Bird, Judson Graves,* for appellee.