[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-11451
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 16, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00371-CV-TWT-1

VALERIA MCINTYRE,

Plaintiff-Appellant,

versus

ECKERD CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(October 16, 2007)

Before BLACK, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Valeria McIntyre appeals the district court's denial of her motion to remand and grant of summary judgment to Eckerd Corporation (Eckerd) in her action alleging defamation, defamation of business reputation, battery, and willful and wanton misconduct. Specifically, McIntyre asserts that (1) Eckerd waived its right to object to the adjudication of McIntyre's state law claims in state court; (2) a genuine issue of material fact existed regarding Eckerd's good faith in communicating information to law enforcement, precluding summary judgment; and (3) she did not abandon her battery claim. We address each issue in turn, and affirm the district court.

## I. BACKGROUND

McIntyre was employed as a staff pharmacist at Eckerd Store 2740 in Cumming, Georgia. In late 2001, Eckerd noticed a variance between the drugs that were ordered and dispensed at store 2740. Eckerd's loss prevention department opened an investigation into the losses, and questioned everyone who had access to the pharmacy. When the losses stopped shortly thereafter, the investigation was closed.

In December 2002, Eckerd reopened its investigation of store 2740 because a bottle of Percocet was missing from the pharmacy. As part of the investigation, Eckerd's regional loss prevention manager, William Wells, authorized one of his

2

investigators, Alan Hollingsworth, to install a hidden camera in the pharmacy. Hollingsworth, along with pharmacy supervisor Mark Orlando,[1] conducted several covert drug counts at the store during a six week period from January 6, 2003, to February 24, 2003.

Over the course of six weeks, the loss prevention team found: (1) 3,446 pills with a warehouse value of $2,973.98 were missing from the pharmacy; (2) the majority of missing pills were Norco brand hydrocodone products; (3) McIntyre was working 92% of the time on the dates when these pills were ordered and received; (4) McIntyre was observed in the store's parking lot after-hours on two occasions with no apparent purpose for being there; and (5) on February 16, 2003, McIntyre was observed on videotape taking pills off a shelf that contained a brand of hydrocodone, pouring them into her hand, and making a motion toward her mouth.

Hollingsworth interviewed McIntyre on February 26, 2003. According to Hollingsworth, McIntyre admitted that she had taken and consumed some Norco products without prescription or payment "just a few times." McIntyre denies ever making this admission, and despite repeated requests refused to provide Hollingsworth with a written statement.

---

[1] Orlando replaced Woolfolk as Eckerd's district pharmacy supervisor.

During the interview, Eckerd representatives contacted Dr. James Bartling, the intervention coordinator for the Georgia Board of Pharmacy. Eckerd states Bartling was contacted for the purpose of convincing McIntyre to seek treatment. Bartling testified that he and McIntyre spoke for approximately fifteen minutes, during which time McIntyre admitted she had taken some pills without prescription or payment. McIntyre also disputes that she ever told Bartling she had taken drugs without prescription or payment.

At the end of the interview, McIntyre again refused to sign a written statement. McIntyre contends that when she stood and attempted to leave the interview, Hollingsworth grabbed her left arm and she had to pull herself away to break loose. McIntyre then left the store. Hollingsworth denies ever touching McIntyre.

Per Wells' instructions, Hollingsworth immediately contacted Forsyth County Police regarding the store's losses and filed a report. In his written statement, Hollingsworth specified the amount of pills missing, their dollar value, and the details of Eckerd's loss prevention investigation. He also supplied the police with Eckerd's investigative file, which included the videotape. McIntyre was subsequently arrested and charged with unauthorized distribution of narcotics.

Following her entrance into a pretrial diversion program and agreement to submit to drug testing, the criminal charge against her was dismissed.

In 2003, McIntyre filed an action against Eckerd in district court alleging race and sex discrimination, as well as retaliation. She alleged she was terminated from her pharmacist position because of her race and her previous complaints of discrimination.[2] The district court granted Eckerd's motion for summary judgment, dismissing McIntyre's federal law claims with prejudice and declining to exercise supplemental jurisdiction over the state law claims.

McIntyre filed her current lawsuit on February 3, 2006 in the Superior Court of Fulton County, Georgia. Eckerd then removed the case to federal district court on the basis of diversity jurisdiction. The district court granted Eckerd's motion for summary judgment on all of McIntyre's state law claims.

---

[2] In February 2002, McIntyre was informed by Eckerd's pharmacy district supervisor, Cindy Woolfolk, that because of customer complaints and lagging sales, McIntyre would be transferred to a different store and another pharmacist, Richard Byrd, would fill her position. McIntyre, who is African-American, stated that she thought the decision was based on her race because Byrd was white and because some of the store's customers were bigoted. McIntyre felt the proposed transfer was in direct response to complaints she made to Eckerd following a January 2002 confrontation with a white customer. In the confrontation, the customer used the "n" word. Woolfolk confirmed the bigotry of some of store 2740's customers, stating she received one or two complaints per month from customers who objected to the fact store 2740's pharmacist was an African-American female. McIntyre subsequently filed a complaint with the Equal Employment Opportunity Commission, asserting she was transferred because of her race. Byrd was hired as the new pharmacist at store 2740 in March 2002, but resigned after only two weeks. Following Byrd's resignation, Woolfolk informed McIntyre that she was not going to be transferred.

## II. DISCUSSION

A. *Denial of motion to remand*

McIntyre first contends the district court erred in denying her motion to remand. She asserts that in her 2003 action alleging Title VII discrimination, retaliation, and state law claims, the magistrate judge recommended dismissal of the federal claims, but recommended the district court decline to accept jurisdiction over the state law claims. The magistrate judge stated that such claims ought to be heard in a court with a "surer-footed reading of applicable law." *See United Mine Workers of Am. v. Gibbs*, 86 S. Ct. 1130, 1139 (1966). The district court adopted the magistrate's recommendations, dismissing the federal claims and declining to assert supplemental jurisdiction over the state law claims. McIntyre asserts that because Eckerd had the right to object to the magistrate's recommendation the state law claims be heard in state court, but did not object, Eckerd waived its right to object to the adjudication of McIntyre's state law claims in state court.

The district court did not err in denying McIntyre's motion to remand. *See Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1297 (11th Cir. 2007) (reviewing a district court's decision to deny a motion to remand *de novo*). Eckerd showed (and McIntyre does not dispute) that the parties were completely diverse, and the

6

amount of controversy exceeded $75,000. Thus, the district court had diversity jurisdiction over this action. *See* 28 U.S.C. § 1332(a). In the 2003 action, the magistrate judge was addressing whether the district court should exercise supplemental jurisdiction, not whether it could avoid diversity jurisdiction. Thus, there was no reason for Eckerd to object to the magistrate judge's recommendation, and Eckerd's failure to object does not constitute a waiver.

B. *Genuine issue of material fact regarding Eckerd's good faith*

McIntyre next asserts the district court erred when granting summary judgment to Eckerd by concluding Eckerd had acted in good faith when communicating statements concerning McIntyre's alleged criminal conduct to the Forsyth County law enforcement authorities. She contends there was a genuine issue of material fact as to Eckerd's good faith, and the district court should have reserved this issue for jury consideration.

McIntyre contends Eckerd defamed her and her business reputation by filing the report with law enforcement. Under Georgia law, three elements must be proven to establish a statement constitutes defamation: (1) the statement was false, (2) the statement was malicious, and (3) the statement was published. O.C.G.A. § 51-5-1(a). "Statements made with a good faith intent on the part of the speaker to protect his or her interest in a matter in which it is concerned,"

7

however, are privileged under Georgia law. O.C.G.A. § 51-5-7(3). This includes communications "made in good faith by the injured person in the prosecution of an inquiry regarding a crime which he believes to have been committed upon his property." *Tetrault v. Shelton*, 347 S.E.2d 636, 639 (Ga. Ct. App. 1986) (emphasis omitted). "For the defense of qualified privilege to exist, it must be made: (1) in complete good faith; (2) with an interest to uphold; (3) by a statement properly limited in scope; (4) on a proper occasion; and (5) by publication to a proper person." *Smith v. Vencare, Inc.*, 519 S.E.2d 735, 741 (Ga. Ct. App. 1999) (emphasis omitted).

The district court did not err in concluding Eckerd's representatives made the statements to law enforcement authorities in complete good faith. *See Boim v. Fulton County Sch. Dist.*, 494 F.3d 978, 982 (11th Cir. 2007) (reviewing a grant of summary judgment *de novo*). Eckerd had videotape evidence of McIntyre removing pills from a shelf where Norco products were stored, pouring them into her hand, and making a motion toward her mouth. Additionally, both Hollingsworth and Bartling testified that McIntyre admitted taking drugs without prescription or payment. Further, records showed McIntyre was working 92% of the time these pills were ordered and received. Eckerd's statements to the police were made to protect Eckerd's interest in its property and consisted only of

information relevant to that loss. The statements were given directly to law enforcement authorities. Thus, the district court did not err in concluding Eckerd was entitled to qualified privilege for its statements to law enforcement authorities.[3] *See Smith*, 519 S.E.2d at 741.

C. *Abandonment of battery claim*

Lastly, McIntyre asserts the district court erred in concluding she abandoned her battery claim. McIntyre contends she responded to the battery claim in her response to Eckerd's motion for summary judgment by mentioning the facts upon which her claim was based in the facts section of her brief. McIntyre contends she needed only to mention her claim in some form or fashion to preserve it, and her mention of the events in her statement of facts was sufficient.

> In opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him. There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.

---

[3] Although McIntyre contends Eckerd's malice toward her is shown by Hollingsworth's willfully false statements, McIntyre's conclusory allegation is not enough to show malice. *See Sparks v. Parks*, 324 S.E.2d 784, 787 (Ga. Ct. App.1984) (stating a defamed party can sustain her right of action if "the privilege is used merely as a cloak for venting private malice, and not bona fide in promotion of the object for which the privilege is granted").

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (quotations and citations omitted).

Eckerd argued for summary judgment on McIntyre's battery claim. In McIntyre's response to Eckerd's motion, however, she offered no argument regarding her battery claim. Thus, the district court did not err in concluding that because McIntyre made no argument on this claim, she abandoned it. *See id.*

## III. CONCLUSION

The district court did not err in denying McIntyre's motion to remand, or in granting summary judgment to Eckerd. We affirm the district court.

**AFFIRMED.**