A96A1119. GREELEY v. A. G. SPANOS COMPANIES.
(479 SE2d 23)

POPE, Presiding Judge.

Plaintiff Pamela Greeley worked in an office building owned and managed by defendant A. G. Spanos Companies. After falling on a slippery tile floor in a common area of the building, Greeley sued defendant to recover for the injuries she sustained in her fall. The trial court held that plaintiff had equal knowledge of the dangerous condition as a matter of law and granted summary judgment for defendant. We conclude that whether plaintiff had equal knowledge of the danger and whether she exercised due care for her own safety were properly questions for the jury,[1] and therefore reverse the grant of summary judgment.

We view the evidence in a light favorable to plaintiff (the party opposing the motion for summary judgment). See, e.g., *Sheriff's Best Buy v. Davis*, 215 Ga. App. 290, 291 (450 SE2d 319) (1994). Prior to plaintiff's fall, the building maintenance man had cleaned the elevator doors with a substance called "the Silencer," which comes out of an aerosol can as a fine mist. When the building manager inspected his work, she noticed that the floor in front of the elevators seemed shiny. Realizing that the shiny areas might be hazardous, she directed the maintenance man to "hot mop" them, meaning to mop

---

[1] In many cases, including this one, these questions are flip-sides of the same inquiry: when we ask whether plaintiff's failure to look down at the floor and notice the hazard was unreasonable as a matter of law, we are essentially asking whether plaintiff had constructive knowledge of the hazard.

the shiny floors down with plain hot water, and to put out "wet floor" warning signs. The maintenance man did mop the floor and put up the warning signs.

For two or three days before her accident, plaintiff had noticed the slick floor and the warning signs and had been particularly cautious while walking in front of the elevators. On the day she fell, however, the warning signs were not present. She therefore assumed the hazardous condition had been corrected and did not pay particular attention to the floor. She fell while exiting the elevator, seriously injuring her shoulder, and then discovered an oily substance on her clothes and hand.

Under these circumstances, a jury could conclude that defendant had actual or constructive knowledge that the floor was still unusually slippery in spots, and that plaintiff did not. Plaintiff's awareness of the danger on previous days does not compel the conclusion that she was aware of the danger on the day of her fall, particularly when the warning signs that had previously accompanied the danger were no longer present.

The dissent suggests that plaintiff's statement in her deposition that she did not recall looking at the floor is fatal to her case. In *Barentine v. Kroger Co.*, 264 Ga. 224 (443 SE2d 485) (1994), however, the Supreme Court held that even if a plaintiff admits he could have seen liquid on the floor if he had looked at it, a verdict for the defendant is *not* demanded. Rather, the question of whether the plaintiff exercised reasonable care for his safety under all the circumstances, despite his failure to look straight down at the floor while he was walking, was one for the jury to decide. This holding recognized the reality of everyday life, in which perfectly "reasonable" people fail to look straight down at the floor all the time. Instead, they look ahead or around, at a view that encompasses the floor but does not necessarily focus on it unless they are warned that the floor is particularly dangerous. If the plaintiff's admission in *Barentine* was not fatal, certainly plaintiff's deposition statement here should not be, since unlike the plaintiff in *Barentine*, plaintiff here did *not* say she would have seen the hazard had she looked at the floor.[2]

Accordingly, the trial court erred in granting summary judgment for defendant.

---

[2] Indeed, in another portion of her deposition plaintiff stated she could *not* see the substance on the floor prior to her fall. The dissent argues that this statement is inconsistent with her subsequent statement that she did not recall "concentrating on," "examining," or "looking at" the floor, and thus must be ignored under *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986). These statements are not necessarily inconsistent, however, as a person may see the floor as part of his surroundings when he looks ahead or around, even though he is not looking directly at the floor. Thus, *Prophecy* is inapplicable, and a jury should decide how to interpret and weigh the statements.

*Judgment reversed. Beasley, C. J., McMurray, P. J., Johnson, Blackburn and Ruffin, JJ., concur. Birdsong, P. J., Andrews and Smith, JJ., dissent.*

ANDREWS, Judge, dissenting.

Because I believe the majority has misconstrued the holding in *Barentine v. Kroger Co.*, 264 Ga. 224 (443 SE2d 485) (1994), and ignored the mandate of *Alterman Foods v. Ligon*, 246 Ga. 620 (272 SE2d 327) (1980), and the long line of cases holding the plaintiff must show that she was exercising ordinary care for her own safety, I respectfully dissent. Greeley maintains, throughout her deposition testimony, that she never looked down and does not know if there was any foreign substance visible on the floor. She testified as follows: "Q: When you came into work on the morning of the incident, did you notice anything different about the floor, any different condition in the floor than it had been for the four or five days preceding other than the fact the sign wasn't there? Was there anything changed about it? A: I can't honestly say that I was concentrating on the floor. I didn't notice — don't recall specifically saying, you know —. Q: Were you looking at the floor when you came up that morning, the first time you came in the building? A: When I first came into the building, probably not. I come in on the first floor. Q: And I guess you went down to your office, and then at some point you came back down the hall, back to the elevators in order to go to the fifth floor? A: Right. Q: And at that time, do you remember noticing any difference in the condition of the floor as compared to the four or five days before? A: I only noticed that the sign wasn't there. Q: Did you look at the floor when you came back to the fifth floor? A: I don't recall examining the floor or looking at the floor. I just know that the sign wasn't there."

Nowhere in her deposition does she indicate that she *looked* at the floor but could not see any substance on the floor.

Later, Greeley submitted an affidavit as a supplement to her brief in opposition to Spanos' motion for summary judgment in which she states: "After I fell on November 17, 1992 I noticed an oily substance on my pants and hand. Prior to my fall I could not see this or any other substance on the floor of either the elevator or the walkway." If we interpret this as not contradicting her deposition testimony, then we take this statement to mean she did not see anything on the floor because, as stated previously, she does not recall looking at the floor. If we take the statement to mean she did look at the floor and could not see any substance, then this is directly contradictory to her deposition testimony in which she consistently maintained she did not notice the condition of the walkway in front of the elevators and the rule in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27

(343 SE2d 680) (1986), applies.

Accordingly, the uncontroverted evidence in the case is that Greeley did not look down and did not notice whether or not there was any foreign substance discernible on the floor. The majority opinion holds that *Barentine* stands for the proposition that even if Greeley admits she did not look down at the floor as she was stepping off the elevator, it is still a jury question as to whether she was exercising reasonable care. That is not the holding in *Barentine*; moreover, this finding flies in the face of long-established case law requiring a plaintiff to "make use of all [her] senses in a reasonable measure amounting to ordinary care in discovering and avoiding those things that might cause hurt to [her]." *Alterman Foods*, supra at 623. While *Barentine* states that it is possible to exercise ordinary care if the plaintiff offers "a specific reason" for not looking at the floor as he is walking, *Barentine*, supra at 225, that is not the case here. Greeley gives no reason why she did not look where she was stepping, she says only that she did not look. Accordingly, she was not exercising ordinary care for her own safety, and I would hold the trial court correctly granted Spanos' motion for summary judgment.

I am authorized to state that Presiding Judge Birdsong and Judge Smith join in this dissent. .

SMITH, Judge, dissenting.

While I join in Judge Andrews's dissent, I write separately to point out that since Greeley had actual notice of the condition of the floor before any cautionary signs were in place, she had the minimal obligation to glance downward. The alternative is to hold that if a property owner ever uses cautionary signs, the eventual removal of those signs absolves an invitee of any further duty to look ahead or exercise reasonable care, even though the invitee was fully aware of a hazard before the signs were installed. Such reasoning makes the removal of warning signs in effect a warranty of safety and makes the property owner an insurer of the safety of invitees in contravention of well-established Georgia law.

I am authorized to state that Presiding Judge Birdsong and Judge Andrews join in this dissent.

DECIDED DECEMBER 4, 1996 — 

Slip and fall. Fulton Superior Court. Before Judge Wyatt Cummings Moore.

*Bussey & Giudice, Mark E. Bussey, Raymond V. Giudice*, for appellant.

*Long, Weinberg, Ansley & Wheeler, John C. Bonnie, Kathryn S.*

*Whitlock, J. Kenneth Moorman*, for appellee.