**WHOLE COURT**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 14, 2015**

# In the Court of Appeals of Georgia

A15A0219. WHOLE FOODS MARKET GROUP, INC. et al. v.     McF-011
    SHEPARD.

MCFADDEN, Judge.

On January 30, 2010, a truck driven by Whole Foods Market Group, Inc. employee Kevin Hulsey struck a car driven by Richard Shepard as Hulsey was attempting to change lanes on Interstate 75. Shepard brought a personal injury action against Whole Foods and Hulsey alleging that Hulsey was negligent per se for violating the provision of the Uniform Rules of the Road requiring that a "vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." OCGA § 40-6-48 (1). The trial court granted Shepard's motion for partial summary judgment on issues of negligence, proximate cause, and liability,

and Whole Foods and Hulsey appeal. They argue that the trial court misapplied the rule in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986), to disregard some of Hulsey's sworn testimony, and that genuine issues of material fact preclude summary judgment. We find no error in the trial court's application of the *Prophecy* rule and we find that, disregarding the conflicting portions of Hulsey's testimony, the evidence authorized the trial court's grant of summary judgment to Shepard. Accordingly, we affirm.

1. *Facts*.

"On appeal from the grant of summary judgment this [c]ourt conducts a de novo review of the evidence to determine whether there is a genuine issue of material facts and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Dogan v. Buff*, 329 Ga. App. 499 (765 SE2d 674) (2014) (citation omitted).

So viewed, the evidence showed that both Hulsey and Shepard were traveling south on the interstate when the front right wheel of Hulsey's truck struck the rear left wheel of Shepard's car, causing the car to spin out of control and collide twice more with the truck. Neither driver saw the other before the collision occurred. Shepard testified that immediately before the collision he was driving completely within his

lane of travel with no intention of changing lanes. Hulsey testified that he had just begun to change lanes when he felt the impact of the collision, and that before changing lanes he had checked his mirrors and seen no vehicles.

2. *Application of* Prophecy *Rule.*

In an affidavit filed in opposition to summary judgment, Hulsey testified that, although he was beginning to change lanes, he had not yet moved out of his own lane of travel at the time of the collision. Shepard argued to the trial court that she should disregard this testimony under the *Prophecy* rule, see *Prophecy Corp. v. Charles Rossignol, Inc.*, supra, 256 Ga. 27, because it contradicted Hulsey's earlier deposition testimony. Although the trial court did not expressly address this issue in her summary judgment order, her ruling in Shepard's favor implies that she disregarded the allegedly contradictory testimony. Whole Foods and Hulsey argue that this was error because the testimony did not conflict. We disagree.

Under the *Prophecy* rule,

> when a party has given contradictory testimony, and when that party relies exclusively on that testimony in opposition to summary judgment, a court must construe the contradictory testimony against him. In such a case, the court must disregard the favorable portions of the contradictory testimony and then decide whether the remaining evidence is sufficient to get by summary judgment. For purposes of the *Prophecy*

3

rule, testimony is contradictory if one part of the testimony asserts or expresses the opposite of another part of the testimony.

*Bradley v. Winn-Dixie Stores*, 314 Ga. App. 556, 557-558 (724 SE2d 855) (2012) (citations, punctuation and footnote omitted). However, "[c]ontradictory testimony is not to be construed against a party if he offers a reasonable explanation for the contradiction." Id. at 557 n. 8 (citation omitted).

The parties dispute whether a contradiction exists between Hulsey's deposition testimony and his later affidavit testimony. In his deposition, Hulsey acknowledged the truth and accuracy of earlier written statements he had made to Whole Foods in an accident report; by doing so he adopted the previously unsworn statements as part of his sworn deposition testimony. *CSX Transp. v. Belcher*, 276 Ga. 522, 523-524 (1) (579 SE2d 737) (2003). In one of the statements adopted into his sworn testimony, Hulsey indicated that he "started to change lanes [and] felt the front end shake so [he] move[d] back in the lane [he] was in[.]" In another such statement, Hulsey indicated that he "started to change lanes. [T]hat is when [he] felt something start to shake in the front end of the truck. So [he] pulled back in the lane [he] was in[.]" Both of these statements depict Hulsey beginning to change lanes, feeling the impact of the collision, and then pulling "*back in*" the lane in which he initially had been traveling.

4

In subsequent affidavit testimony, however, Hulsey averred that he never left the lane in which he initially had been traveling. He stated: "Before I crossed into the lane to my right, I felt a vibration in the front wheel of my vehicle. Therefore, I stopped moving toward the lane on my right, straightened my vehicle which was still in the lane in which I had been driving and began to lightly apply my brakes." Elsewhere in the affidavit, Hulsey stated: "I did not leave my lane of travel to cause the incident[.]"

We agree with the trial court that Hulsey's affidavit testimony that he did not leave his lane of travel conflicted with the written statements, adopted by Hulsey as part of his deposition testimony, that he pulled "back in" his lane of travel. One does not pull "back in" a lane that one already occupies. Whole Foods and Hulsey argue that the affidavit testimony is consistent with other parts of Hulsey's deposition testimony, specifically where Hulsey declined to agree with the questioner's statement that he "came back" into his lane and instead responded, "[w]ell, I don't know that I ever left my lane." But this argument does not resolve the conflict between the statements that Hulsey adopted into his sworn deposition testimony and his later affidavit testimony; instead, it establishes an additional conflict between

5

Hulsey's statement that he pulled "back in" his lane and his testimony suggesting that he may not have "come back" into his lane.

In his affidavit, Hulsey attempted to explain the conflict by noting that he was not directly asked in his deposition if he left his lane. Had he been asked that direct question, he averred, he would have responded that he did not leave his lane. But such a direct question is not necessary to establish a conflict that implicates the *Prophecy* rule. See *Walker v. Brannan*, 243 Ga. App. 235, 237 (533 SE2d 129) (2000). Moreover, Hulsey's explanation does not address the conflict with his statements that, upon feeling the impact of the collision, he pulled "back in" his lane. Hulsey was specifically asked about those statements in the deposition and given an opportunity to disagree with any part of the statements; he testified that he did not disagree with anything in the statements.

Under these circumstances, the *Prophecy* rule authorized the trial court to disregard the portions of the conflicting testimony that were favorable to Hulsey in deciding the motion for summary judgment. *Bradley*, 314 Ga. App. at 557-558.

3. *Negligence per se.*

The evidence, viewed in the light most favorable to Whole Foods and Hulsey except for the contradictory portions of Hulsey's testimony, shows that Hulsey began

6

to change lanes and collided with Shepard's vehicle in Shepard's lane of travel. This evidence demonstrates a violation of OCGA § 40-6-48 (1), which required Hulsey to drive his vehicle "as nearly as practicable entirely within a single lane" and not move his vehicle "from such lane until [he] ha[d] first ascertained that such movement [could] be made with safety," thereby establishing a prima facie case for negligence per se. See *Harden v. Burdette*, 204 Ga. App. 733, 735 (4) (420 SE2d 626) (1992) ("A violation of the Uniform Rules of the Road prima facie establishes negligence per se in the absence of a valid defense.") (citation omitted). Once a plaintiff establishes a prima facie case of negligence per se, the "burden then shifts to the defendant to show that the violation was unintentional and in the exercise of ordinary care." Id. (citations and punctuation omitted).

Disregarding the contradictory portions of Hulsey's testimony, Whole Foods and Hulsey have pointed to no evidence that raises a fact question as to whether Hulsey exercised ordinary care despite moving into Shepard's lane and colliding with his vehicle. Although Hulsey testified that before beginning to change lanes he checked the adjacent lane but did not see Shepard's vehicle, the undisputed evidence shows that Shepard's vehicle nevertheless was driving in that adjacent lane in front of Hulsey's truck. There is no evidence that Shepard also was attempting to change

7

lanes at the time of the accident. Under these circumstances, "[s]peculation that [Hulsey's] actions were conceivably reasonable under the circumstances, which might have been a question for the jury, is a contradiction in terms for he was undisputably *mistaken* in ascertaining that he could [move from his lane] safely." *Hitchcock v. McPhail*, 221 Ga. App. 299, 300 (471 SE2d 256) (1996) (citation omitted; emphasis in original). Compare *Turner v. Masters*, 304 Ga. App. 855, 857 (1) (698 SE2d 346) (2010) (jury was authorized to find that driver exercised ordinary care in changing lanes where driver testified that he made an effort to ensure that he had a clear path of travel and posited that the other driver, whom he struck, had also been attempting to change lanes at that time). Accordingly, Whole Foods and Hulsey have not pointed to evidence that rebuts a finding of negligence per se, and the trial court did not err in granting partial summary judgment to Shepard. Cf. *Hitchcock*, 221 Ga. App. at 300-301 (trial court did not err in directing verdict to plaintiff in case where undisputed evidence established that defendant violated the rules of the road based on her mistaken belief that she could make a driving maneuver safely).

*Judgment affirmed.  Barnes, P.J.,  Ellington, P. J., and Phipps, P. J., concur in the judgment only;  Dillard, Ray, and McMillian, J J., dissent.*

8

A15A0219. WHOLE FOODS MARKET GROUP, INC. et al. v.
SHEPARD.

DILLARD, Judge, dissenting.

Because I disagree with the majority that the trial court properly applied the rule under *Prophecy Corp. v. Charles Rossignol, Inc.*[1] in granting summary judgment to Shepard, I respectfully dissent.

The majority correctly notes that, under *Prophecy*,

> when a party has given contradictory testimony, and when that party relies exclusively on that testimony in opposition to summary judgment, a court must "construe the contradictory testimony against him." In such a case, the court must disregard "the favorable portions of the contradictory testimony" and then decide whether the remaining evidence is sufficient to get by summary judgment. For purposes of the *Prophecy* rule, testimony is contradictory "if one part of the testimony asserts or expresses the opposite of another part of the testimony."[2]

---

[1] 256 Ga. 27 (343 SE2d 680) (1986).

[2] *Bradley v. Winn-Dixie Stores*, 314 Ga. App. 556, 557-58 (724 SE2d 855) (2012).

That said, I disagree with the majority's conclusion, and the trial court's conclusion, that Hulsey's deposition testimony and later-filed affidavit contained contradictory statements.

At the beginning of Hulsey's deposition, he was asked to describe the accident at issue in the case *sub judice*, and he explains that he needed to change lanes to the right in order to access I-285 eastbound. According to Hulsey, "when [he] started to move towards the lane, [he] felt something in [his] front end." He later explained that, as soon as he felt the vibration at the front of his truck, he

> pulled [his] truck straight *in [his] lane*, let up on [his] accelerator, which [his] Jakes kicked in, which is slowing [his] truck down. And when *it wasn't going away with [him] being in [his] lane*, [he] started applying [his] brakes real slow to get [his] truck slowed down to almost where [he] could . . . when [he] applied the brakes, the car come around (sic) in front of [him].[3]

Counsel then asked Hulsey the following question: "And it was after you got back into your lane when you felt [Shepard's vehicle] swung around to the – swing around to the front?" Hulsey responded, "When I was in my lane, the vibration was

_____

[3] Emphasis supplied. Ellipses in original.

2

still with me." Counsel continued, "When you came back?" And Hulsey replied, "Yeah. Well, *I don't know that I ever left my lane. I started towards that lane, and when I started to turn my steering wheel a bit, I felt a vibration. I straightened, turned it back straight up, straightened out in my lane* and had let up on the accelerator . . . ."[4]

A while later, Hulsey was presented with a copy of the accident report he completed for his employer, and he confirmed that the written statement he provided to explain the accident was contained on page three and continued on to the subsequent page. After reviewing the written statement, Hulsey agreed with counsel's observation that "the statement that [counsel was] reading is the same statement [he was] giving [to counsel]" that day and that he "wouldn't change anything."

According to one of Hulsey's written statements, he "started to change lanes [and] [he] felt the front end shake so [he] move (sic) back in the lane [he] was [in] [and] the shaking did not stop . . . ." In a lengthier written statement, he explained that, after checking his mirrors and engaging his blinker, he "started to change lanes [and] that is when [he] felt something start to shake in the front end of the truck." As

---

[4] Emphasis supplied.

3

a result, he "pulled back in the lane [he] was in [and] the front end continued to shake."

After Shepard filed his motion for summary judgment, in which Shepard contended that Hulsey's deposition testimony established that Hulsey had negligently entered Shepard's lane, Hulsey filed an affidavit in response and sought to clarify his earlier testimony. Specifically, Hulsey averred that, had he been asked point blank whether he had left his lane of travel, he would have responded that he did not. Hulsey further averred that he "began to move toward the lane to [his] right" and that, "[b]efore [he] crossed into the lane to [his] right, [he] felt a vibration in the front right wheel of [his] vehicle," and, as a result, "[he] stopped moving toward the lane to [his] right, straightened [his] vehicle which was still in the in the (sic) lane in which [he] had been driving and began to lightly apply [his] brakes."

The majority concludes that the testimony in Hulsey's affidavit contradicts the testimony given in his written statement and deposition,[5] taking particular issue with Hulsey's prior statements that he pulled "back in" his lane of travel and asserting that "[o]ne does not pull 'back in' a lane that one already occupies." Thus, the majority

_____

[5] *See CSX Transp. v. Belcher*, 276 Ga. 522, 523 (1) (579 SE2d 737) (2003) ("[A] witness under oath who testifies that an unsworn statement is true and accurate incorporates the earlier statement into his present, sworn testimony.").

4

finds that Hulsey's later statements—both in his oral deposition testimony and in his affidavit—conflict to the extent that Hulsey contends he never left his lane of travel. I disagree that Hulsey's statements are contradictory.

To begin with, for purposes of the *Prophecy* rule, the issue of whether a party-witness's testimony is inconsistent is "to be determined, not by individual words or phrases alone, but by the whole impression or effect of what has been said."[6] Here, in each of Hulsey's sworn statements (*i.e.*, the written accident report, the deposition testimony, and his affidavit), he has explained that he began moving *toward* Shepard's lane; that when he did so, he felt a vibration; and that, upon feeling an impact, he moved or straightened his vehicle "back" in his lane of travel. Indeed, Hulsey has asserted on these three separate occasions that he "pulled [his truck straight in [his] lane"; "straightened, turned it back straight up, straightened out in my lane"; "move[d] back in the lane [he] was [in]"; "pulled back in the lane [he] was in"; and "straightened [his] vehicle which was still in the . . . lane in which [he] had been driving." Thus, it is not, as the majority asserts, impossible that Hulsey moved "back" into a lane he was already occupying when Hulsey's prior testimony reflects that he

---

[6] *Price v. Thapa*, 323 Ga. App. 638, 640 (745 SE2d 311) (2013); *accord Smith v. Vencare, Inc.*, 238 Ga. App. 621, 624 (1) (519 SE2d 735) (1999).

5

had started moving *toward* the other lane but discontinued that endeavor by straightening the front portion of his vehicle "back" into the lane he was still occupying.[7] In this regard, Hulsey's later-filed affidavit is not in material conflict with his prior sworn statements and instead "offers a fuller, more expansive, and complete account of the accident."[8] Accordingly, the rule in *Prophecy* does not apply, summary judgment was not appropriate, and the judgment of the trial court should be reversed.

I am authorized to state that Judge Ray and Judge McMillian join in this dissent.

---

[7] *See Bradley*, 314 Ga. App. at 557 ("[B]ecause it is not absolutely impossible, we cannot say that 'one part of the testimony asserts or expresses the opposite of another part of the testimony.'"); *Greeley v. A.G. Spanos Co.*, 223 Ga. App. 783, 784 n.2 (479 SE2d 23) (1996) (asserting that a "jury should decide how to interpret and weigh" statements that were "not necessarily inconsistent").

[8] *Price*, 323 Ga. App. at 640; *accord Smith*, 238 Ga. App. at 624 (1) ("Further, the facts omitted from the earlier statements and testimony do not cause a conflict with the latter testimony; such testimony is merely fuller, more expansive, and complete.").